UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANNABELLE GURWITCH, individually and
on behalf of all others similarly situated,

                    Plaintiff,

          v.

SAVE ON SP, LLC, EXPRESS SCRIPTS,
INC., and ACCREDO HEALTH GROUP
INC.,

                    Defendants.

Case No. 1:25-CV-00006-LJV

**DEFENDANTS EXPRESS SCRIPTS,
INC.'S AND ACCREDO HEALTH
GROUP, INC.'S MEMORANDUM OF
LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

          Defendants Express Scripts, Inc. ("Express Scripts") and Accredo Health Group, Inc.

("Accredo") hereby move to dismiss the Plaintiff Annabelle Gurwitch's ("Gurwitch") Amended

Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state

a claim under Fed. R. Civ. P. 12(b)(6).

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ..........................................................1

FACTUAL BACKGROUND .................................................................................................3

I.    The Writers' Guild of America Plan Has Implemented a Copay Solution Offered
by Express Scripts Through SaveOnSP..........................................................................3

II.    The Operation and Effect of the SaveOn Program on Gurwitch's Healthcare
Benefits Is Fully Disclosed in Plaintiff's Plan Documents.............................................6

III.    While Copayment Assistance Funds Offered by Pharmaceutical Manufacturers
Are at the Core of the SaveOn Program, Those Manufacturers Have Not Been
Deceived by the SaveOn Program..................................................................................7

STANDARD OF REVIEW ..................................................................................................7

ARGUMENT.........................................................................................................................9

I.    Gurwitch Does Not Have Standing to Bring This Suit Because She Has Not
Demonstrated That She Suffered a Concrete, Particularized Injury Caused
by Defendants' Conduct..................................................................................................9

II.    Gurwitch Fails to State a Claim Under the Racketeer Influenced and Corrupt
Organizations Act ("RICO"). ........................................................................................13

    A.    Plaintiff Has Not Met the High Burden of Pleading a Claim Under RICO,
Which Was Not Intended for Use Against Legitimate Businesses Making
Legitimate Business Decisions. ........................................................................13

    B.    Gurwitch Lacks Statutory Standing Under RICO Because She Does
Not Show That Defendants Proximately Caused an Injury to Her and
Because She Is Not a Direct Purchaser of Defendants' Services ......................15

    C.    Gurwitch Fails to Plead Predicate Acts of Racketeering or a Scheme to
Defraud, Much Less with Particularity Under Rule 9(b)...................................17

    D.    Gurwitch Fails to Allege a Substantive RICO Violation Because She Has
Not Pleaded a Strong Inference of Fraudulent Intent .........................................22

    E.    Gurwitch Has Not Adequately Pleaded the Existence of an "Enterprise"
Within the Meaning of RICO ............................................................................23

    F.    Gurwitch Has Not Adequately Alleged That Defendants Conducted
the Affairs of the RICO Enterprise ...................................................................25

III.    Gurwitch Has Not Stated a Claim Under ERISA Because She Cannot Show That
Express Scripts Was Acting as a Fiduciary When Taking the Actions Alleged ...............27

A.      Gurwitch Fails to State a Claim Under ERISA Because the Acts Alleged Are Part of the Plan Design and Are Not Fiduciary in Nature ............................27

B.      The Acts Alleged by Gurwitch Are Part of Plan Design and Thus Cannot Give Rise to a Claim for Breach of Fiduciary Duty .............................................30

C.      Gurwitch's Allegations of Violation of ERISA Fail ............................................34

CONCLUSION....................................................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Adelphia Supply USA,*
    2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ......................................................................25, 27

*Aerowest GmbH v. Freitag,*
    2016 WL 3636619 (E.D.N.Y. June 28, 2016)......................................................................23

*Allen v. Credit Suisse Secs. (USA) LLC,*
    895 F.3d 214 (2d Cir. 2018)............................................................................................8, 35

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*
    821 F.3d 352 (2d Cir. 2016) ....................................................................................................15

*Apple Inc. v. Pepper,*
    587 U.S. 273 (2019) ...............................................................................................................16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................................................8, 9

*Atkinson v. Anadarko Bank & Tr. Co.*
    808 F.2d 438 (5th Cir. 1987)..................................................................................................24

*Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown,*
    88 F.4th 344 (2d Cir. 2023)....................................................................................................15

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,*
    968 F.2d 196 (2d Cir. 1992) .....................................................................................................8

*Belfon v. Credit Check Total Consumerinfo.com, Inc.,*
    2018 WL 4778906 (E.D.N.Y. Oct. 1, 2018) ..........................................................................4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................................................8

*Broccoli v. Ashworth,*
    2023 WL 2664770 (S.D.N.Y. Mar. 28, 2023).......................................................................19

*Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.,*
    2009 WL 928718 (E.D.N.Y. Mar. 31, 2009).........................................................................23

*Carter v. Berger,*
    777 F.2d 1173 (7th Cir. 1985) ...............................................................................................16

*Catalano v. BMW of N. Am., LLC,*
    167 F. Supp. 3d 540 (S.D.N.Y. 2016)............................................................................10, 12

*Cedric Kushner Promotions, Ltd. v. King,*
    533 U.S. 158 (2d Cir. 2001)...................................................................................................23

*Cent. States Se. & Sw. Areas Health & Welfare Fund
v. Merck-Medco Managed Care, LLC*,
    433 F.3d 181 (2d Cir. 2005)........................................................................10, 12

*Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
    474 F.3d 463 (7th Cir. 2007)..................................................................................30

*Ciminelli v. United States*,
    598 U.S. 306 (2023)...............................................................................................21

*Cohen v. S.A.C. Trading Corp.*,
    711 F.3d 353 (2d Cir. 2013)...............................................................................9, 22

*Colliton v. Cravath, Swaine & Moore LLP*,
    2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) .......................................................28

*Conn. Parents Union v. Russell-Tucker*,
    8 F.4th 167 (2d Cir. 2021)........................................................................................8

*Crichton v. Golden Rule Ins. Co.*
    576 F.3d 392 (7th Cir. 2009).................................................................................24

*Curtiss-Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995).................................................................................................21

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
    747 F.3d 145, 151-52 (2d Cir. 2014)....................................................................38

*D. Penguin Bros. Ltd. v. City Nat'l Bank*,
    587 F. App'x 663 (2d Cir. 2014)......................................................................23, 25

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001)..................................................................................19

*Doe 1 v. Express Scripts, Inc.*,
    837 F. App'x 44 (2d Cir. 2020)..............................................................................30

*Ferrenbach v. Uber Techs., Inc.*,
    2019 WL 13212571 (E.D.N.Y. May 16, 2019).....................................................9, 15

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)..............................................................................17, 22

*Flexborrow LLC v. TD Auto Fin. LLC*,
    255 F. Supp. 3d 406 (E.D.N.Y. 2017) ...................................................................19

*Gerstenfeld v. Nitsberg*,
    190 F.R.D. 127 (S.D.N.Y. 1999)............................................................................22

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009)....................................................................20

*Guzman v. Bldg. Serv. 32BJ Pension Fund*,
    2023 WL 2526093 (S.D.N.Y. Mar. 15, 2023) .........................................................4

*Hecht v. Commerce Clearing House, Inc.*,
    897 F.2d 21 (2d Cir. 1990)....................................................................................15

*Heidel v. Governor of N.Y. State,*
   2023 WL 1115926 (2d Cir. Jan. 31. 2023)........................................................12

*Hemi Grp., LLC v. City of N.Y.,*
   559 U.S. 1 (2010)........................................................15

*Hughes Aircraft Co. v. Jacobson,*
   525 U.S. 432 (1999)........................................................28

*Illinois Brick Co. v. Illinois,*
   431 U.S. 720 (1977)........................................................16

*In re ClassicStar Mare Lease Litig.,*
   727 F.3d 473 (6th Cir. 2013)........................................................24

*In re Express Scripts, Inc., PBM Litig.,*
   2008 WL 2952787 (E.D. Mo. July 30, 2008)........................................................29

*In re Express Scripts/Anthem ERISA Litig.,*
   285 F. Supp. 3d 655 (S.D.N.Y. 2018)........................................................21, 30

*In re Loral Space & Commc'ns Ltd. Sec. Litig.,*
   2004 WL 376442 (S.D.N.Y. Feb. 27, 2004)........................................................22, 23

*In re Oral Phenylephrine Mktg. & Sales Pracs. Litig.,*
   --- F. Supp. 3d ----, 2024 WL 4606818 (E.D.N.Y. Oct. 29, 2024)........................................................16

*In re Parmalat Sec. Litig.,*
   501 F. Supp. 2d 560 (S.D.N.Y. 2007)........................................................22

*In re Trilegiant Corp., Inc.,*
   11 F. Supp. 3d 82 (D. Conn. 2014)........................................................19

*JGIAP RH 160 LLC v. CRI Holding Corp.,*
   2023 WL 5979125 (E.D.N.Y. Aug. 16, 2023)........................................................24, 25

*Katzman v. Victoria's Secret Catalogue,*
   167 F.R.D. 649 (S.D.N.Y. 1996)........................................................14

*Kokoshka v. Inv. Advisory Comm. of Columbia Univ.,*
   2021 WL 3683508 (S.D.N.Y. Aug. 19, 2021)........................................................38

*Krauss v. Oxford Health Plans, Inc.,*
   517 F.3d 614 (2d Cir. 2008)........................................................37

*Larson v. United Healthcare Ins.,*
   723 F.3d 905 (7th Cir. 2013)........................................................28

*Lerner v. Fleet Bank, N.A.,*
   318 F.3d 113 (2d Cir. 2003)........................................................14

*Levi v. McGladrey LLP,*
   2016 WL 1322442 (S.D.N.Y. Mar. 31, 2016)........................................................37

*Li Jun An v. Hui Zhang,*
   2013 WL 6503513 (S.D.N.Y. Dec. 6, 2013)........................................................9

*Liberty Glob. Logistics LLC v. U.S. Mar. Admin.*,
    2014 WL 4388587 (E.D.N.Y. Sept. 5, 2014) ........................................................... 11

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ....................................................................................... 10, 12, 13

*Mackin v. Auberger*,
    59 F. Supp. 3d 528 (W.D.N.Y. 2014) ................................................................... 19

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012) .................................................................................... 8

*Makarova v. U.S*,
    201 F.3d 110 (2d Cir. 2000) ............................................................................... 7, 8

*Martinez v. JPMorgan Chase Bank, N.A.*,
    178 F. Supp. 3d 184 (S.D.N.Y. 2016) .................................................................. 21

*Massaro v. Palladino*,
    19 F.4th 197 (2d Cir. 2021) ............................................................................. 27, 28

*Matusovsky v. Merrill Lynch*,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002) ............................................................. 35, 36

*Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*,
    2016 WL 2939164 (S.D.N.Y. May 19, 2016) ........................................................ 4

*McCarthy v. Recordex Serv., Inc.*,
    80 F.3d 842 (3d Cir. 1996) ................................................................................... 16

*McNamara v. City of Chi.*,
    138 F.3d 1219 (7th Cir. 1998) ......................................................................... 10, 11

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) ................................................................................ 20

*Moeckel v. Caremark, Inc.*,
    622 F. Supp. 2d 663 (M.D. Tenn. 2007) ......................................................... 29, 30

*Mohr-Lercara v. Oxford Health Ins., Inc.*,
    2022 WL 524059 (S.D.N.Y. Feb. 22, 2022) .................................................... 35, 36

*Moss v. Morgan Stanley Inc.*,
    719 F.2d 5 (2d Cir. 1983) ................................................................................. 15, 17

*Moss v. BMO Harris Bank, N.A.*,
    258 F. Supp. 3d 289 (E.D.N.Y. 2017) .................................................................. 14

*Motorola Credit Corp. v. Uzan*,
    322 F.3d 130 (2d Cir. 2003) ................................................................................ 15

*Mulder v. PCS Health Sys., Inc.*,
    432 F. Supp. 2d 450 (D.N.J. 2006) ................................................................. 29, 30

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) .................................................................................. 4

*Nielsen v. AECOM Tech. Corp.*,
 762 F.3d 214 (2d Cir. 2014)...........................................................................8, 9

*N.Y. State Teamsters Council Health & HospitalFund v. Centrus Pharmacy Solutions*,
 235 F. Supp. 2d 123 (N.D.N.Y. 2002) ......................................................29, 33

*Oriska Ins. v. Avalon Gardens Rehab. & Health Care Ctr., LLC*,
 2019 WL 4195267 (N.D.N.Y. Sept. 4, 2019) ....................................................25

*Pappas v. Bank of Am. Corp.*,
 309 F. App'x 536 (2d Cir. 2009) ........................................................................22

*Pegram v. Herdrich*,
 530 U.S. 211 (2000) .........................................................................27, 28, 30

*Porrazzo v. Bumble Bee Foods, LLC*,
 822 F. Supp. 2d 406 (S.D.N.Y. Sept. 30, 2011) ..................................................5

*Pu v. Charles H. Greenthal Mgmt. Corp.*,
 2010 WL 774335 (S.D.N.Y. Mar. 9, 2010)........................................................22

*Rajamin v. Deutsche Bank Nat'l Tr. Co.*,
 757 F.3d 79 (2d Cir. 2014)....................................................................................8

*Ray v. Spirit Airlines, Inc.*
 126 F. Supp. 3d 1332 (S.D. Fla. 2015) ..............................................................13

*Reves v. Ernst & Young*,
 507 U.S. 170 (1993) ............................................................................................25

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
 30 F.3d 339, 344 (2d Cir. 1994) ........................................................................24

*Rubenstein v. Nat'l Ass'n of Realtors*,
 2021 WL 3146249 (D. Conn. July 26, 2021) .....................................................19

*Saltzman v. Independence Blue Cross*,
 384 F. App'x 107 (2d. Cir. 2010) .......................................................................28

*Sanchez v. ASA Coll., Inc.*,
 2015 WL 3540836 (S.D.N.Y. June 5, 2015).......................................................14

*Schwartz v. HSBC Bank USA, N.A.*,
 750 F. App'x 34 (2d Cir. 2018) ..........................................................................11

*Sec. & Exch. Comm'n v. Govil*,
 86 F.4th 89 (2d Cir. 2023)...................................................................................21

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016).......................................................................................10, 12

*Thole v. U. S. Bank N.A*,
 590 U.S. 538 (2020) ............................................................................................32

*TransUnion LLC v. Ramirez*,
 594 U.S. 413 (2021) ..............................................................................................8

*Trollinger v. Tyson Foods, Inc.*,
    370 F.3d 602 (6th Cir. 2004) .......................................................................16

*United Food & Com. Workers Unions & Employers Midwest Health Benefits Fund
v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) .................................25, 26

*United States v. Angelilli*,
    660 F.2d 23 (2d Cir. 1981) ..........................................................................13

*United States v. Turkette*,
    452 U.S. 576 (1981) .....................................................................................13

*Vaglica v. Reckitt Benckiser LLC*,
    699 F. Supp. 3d 200 (E.D.N.Y. 2023) .....................................................9, 15

*Warth v. Seldin*,
    422 U.S. 490 (1975) .....................................................................................10

*Weitlauf v. Hopkins*,
    2023 WL 2560831 (W.D.N.Y. Mar. 17, 2023) ............................................14

*Williams v. Affinion Grp., LLC*,
    889 F.3d 116 (2d Cir. 2018) ........................................... 17, 19, 20, 21

**Statutes**

18 U.S.C. § 1952 .............................................................................................17
18 U.S.C. § 1962(c) .................................................................................. 13, 19
29 U.S.C. § 404(a)(1)(D) ............................................................................35, 36
29 U.S.C. § 1002(21)(A) ..................................................................................27
29 U.S.C. § 1022(a) ...........................................................................................4
29 U.S.C. § 1104(a)(1) ....................................................................................38
29 U.S.C. § 1133 .........................................................................................36, 37

**Rules**

Federal Rule of Civil Procedure 9(b) ............................................. 7, 9, 17, 19, 20
Federal Rule of Civil Procedure 12(b)(1)..................................................7, 8
Federal Rule of Civil Procedure 12(b)(6).............................................7, 8, 9

**Regulations**

29 C.F.R. § 2509.75-8 .....................................................................................33
29 C.F.R. § 2560.503-1(l)................................................................................37

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Amended Complaint seeks astronomical damages against both Express Scripts and Accredo, alleging a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), predicated on alleged violations of the federal criminal mail and wire fraud statutes. The Amended Complaint also alleges a series of violations of fiduciary duty under ERISA against Express Scripts and seeks injunctive relief. Yet, despite leveling extraordinarily serious allegations against Express Scripts and Accredo, Plaintiff Anabelle Gurwitch has failed to allege the facts necessary to adequately plead her claims. This failure guts her claims and compels dismissal of the Amended Complaint with prejudice.

Gurwitch alleges that she was a participant in a health plan that chose to implement a copay solution provided by Save On SP LLC ("SaveOnSP"). The essence of her claim is that the so-called "SaveOn Program,"[1] conceived of by SaveOnSP and marketed and operated by Defendants, secures copayment assistance from pharmaceutical manufacturers meant to flow directly from those companies to patients. Gurwitch emphasizes the aspect of the "SaveOn Program" that she claims is wrongful—that the copayment assistance obtained does not count toward her out-of-pocket maximum under the Affordable Care Act ("ACA")—was concealed from her. She claims that Defendants "do not disclose that this leads, dollar for dollar, to increased cost-sharing obligations for other healthcare expenses" and calls this an "omission" about the SaveOn Program that makes Defendants' statements about it "materially misleading." Am. Compl. ¶ 173.

But that is obviously and demonstrably wrong, and the facts conclusively show otherwise. Gurwitch's plan documents, which are integral to her claims and publicly available on the internet,

---

[1] For the Court's ease of reference, Defendants adopt this terminology from Gurwitch's Amended Complaint.

explicitly told her exactly what she claims was hidden. As detailed in the Factual Background directly below, they expressly state that the cost of specialty drugs in the program will not count toward the ACA's out-of-pocket cost-sharing limit, regardless of whether she—or any other plan participant—participates in the SaveOn Program. Nothing was concealed from Gurwitch. Her plan documents explicitly disclosed that her copay solution would not count to her out-of-pocket maximums. Her claims of deception and concealment therefore have no merit. (As these plan documents are publicly available, no one, *e.g.*, a pharmaceutical company or a plaintiff's attorney, seeking to apprehend the facts could possibly be misled.) While the omission in the Amended Complaint of any reference to the disclosures in the plan documents is concerning, the impact of these disclosures is clear: They compel dismissal of the Amended Complaint with prejudice because, as set forth below, no RICO or ERISA case can be made in light of these disclosures and the plan terms. And that is not the only fatal flaw in Gurwitch's Amended Complaint.

Gurwitch's claims fail, *first*, because she lacks standing to pursue them. Gurwitch's 60-page, 216-paragraph Amended Complaint has *one paragraph of allegations pertaining to her*. Those allegations fail to show how Gurwitch suffered any injury as a result of the conduct alleged, and she cannot establish standing based on hypothetical injuries to others. But even if Gurwitch could show standing, her claims fail as a matter of law.

*Second*, her RICO claim is replete with defects. She does not show how the alleged violation was the proximate cause of any injury to her. She does not allege facts showing that Express Scripts and/or Accredo made any misrepresentation or acted with an intent to defraud. She fails to make out any predicate act of "racketeering," *e.g.*, mail or wire fraud. And she does not make the requisite showing of a RICO "enterprise."

*Third*, Gurwitch's ERISA claim is premised on allegations that cannot make out a claim,

because Gurwitch cannot establish that Express Scripts—Accredo is not named in Gurwitch's ERISA claim—was acting in a fiduciary capacity. Absent such a showing, there can be no breach of fiduciary duty under ERISA.

## FACTUAL BACKGROUND

Plaintiff Anabelle Gurwitch alleges that she was a participant in a health plan sponsored by the Writers' Guild of America ("WGA") and took a specialty medication to treat lung cancer. Am. Compl. ¶ 19. The WGA health plan adopted a copay solution for specialty medications, operated by SaveOnSP. That plan—which Gurwitch labels the "SaveOn Program"—helps health plans lower the cost of specialty medications, by giving them the benefit of copayment assistance funded and offered by pharmaceutical manufacturers.

Plaintiff claims that health plan participants may be hurt because copayments for specialty medications in the SaveOn Program do not count toward annual cost-sharing limits—a fact about the program that is disclosed in writing to plan participants like Gurwitch—so certain class members may pay more out-of-pocket costs on medical or other claims.

Gurwitch offers up just one paragraph of facts about herself in the Amended Complaint, which reveals nothing about whether or how the SaveOn Program has impacted her. She seeks to represent a class of individuals, and claims that, in administering the SaveOn Program, SaveOnSP and Express Scripts violated ERISA, and all Defendants violated RICO.

I.     **The Writers' Guild of America Plan Has Implemented a Copay Solution Offered by Express Scripts Through SaveOnSP.**

Express Scripts is a pharmacy benefit manager ("PBM") that helps administer prescription drug programs for health plans, employers, government agencies, and other entities. Am. Compl. ¶ 21. Accredo is a specialty pharmacy that provides medications and support for patients with complex and chronic conditions, ranging from cancer to HIV/AIDS to rare genetic disorders. *Id.*

¶ 22. Gurwitch alleges that she is a participant in a health plan sponsored by the Writers' Guild of America, an Express Scripts client. *Id.* ¶ 19.

Gurwitch alleges that she was diagnosed with Stage 4 lung cancer in 2020. *Id.* ¶ 19. She was prescribed Tagrisso, a specialty biologic medication manufactured by the global Fortune 500 pharmaceutical manufacturer AstraZeneca. *Id.* AstraZeneca offers commercially insured patients copayment assistance for Tagrisso. *Id.* Gurwitch was commercially insured and began receiving copayment assistance for Tagrisso in September 2020. *Id.* In January 2022, Gurwitch switched to the WGA-sponsored plan administered by Blue Cross Blue Shield ("BCBS"). *Id.*

WGA members are eligible for health coverage through the Writers' Guild-Industry Health Fund ("WGA Plan").[2] Express Scripts administers the WGA Plan's prescription drug benefits. Ex. 1 at 140. The WGA Plan implemented the SaveOn Program effective February 1, 2021, per a Summary of Material Modifications ("WGA SMM")[3] issued to all plan participants on November 30, 2020.[4]

---

[2] A true and accurate copy of the WGA Plans' Summary Plan Description ("WGA SPD") dated March 31, 2024, is publicly available at bit.ly/3FqQFig, and a copy is attached as Exhibit 1 to the accompanying Declaration of Terrance P. Flynn. The WGA SPD is the governing Plan Document. Ex. 1 at v.

[3] A true and accurate copy of the WGA SMM is publicly available at http://bit.ly/3Dr08pb and a copy is attached as Exhibit 2 to the Flynn Declaration. The WGA SMM was an amendment to the WGA SPD then in effect, pursuant to 29 U.S.C. § 1022(a). Ex. 2 at 4.

[4] The Court may consider the WGA SPD and WGA SMM because these plan documents are "integral to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *see, e.g., Guzman v. Bldg. Serv. 32BJ Pension Fund*, 2023 WL 2526093, at *8 (S.D.N.Y. Mar. 15, 2023) (collecting cases) (considering plan's SPD on motion to dismiss because "[i]n the ERISA context, courts routinely hold that plan documents … are integral to the allegations in the complaint"); *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, 2016 WL 2939164, at *3 (S.D.N.Y. May 19, 2016) ("The Governing Plan documents submitted by the defendants firmly fit into the category of documents integral to a complaint. Courts routinely consider ERISA plan documents and their summary plan descriptions on motions to dismiss."). The Court can alternatively take judicial notice of these documents. *See, e.g., Belfon v. Credit Check Total Consumerinfo.com, Inc.*, 2018 WL 4778906, at *3 (E.D.N.Y. Oct. 1, 2018) (collecting cases) ("It is entirely proper for the Court to take judicial notice of public[ly] available documents on

The WGA SMM explains that the SaveOn Program "is intended to help the Fund and Participants save money on certain specialty medications by obtaining copay assistance from drug manufacturers when such assistance is offered." Ex. 2 at 1. WGA plan participants "who participate[] in the copay assistance program will have no out-of-pocket cost for certain specialty drugs." *Id.* WGA Plan participants obtained their specialty drugs through Accredo before and after the WGA Plan began participating in the SaveOn Program. *Id.* Further per the WGA SMM:

> If you are currently taking a prescription drug that is on the list of the drugs that are eligible for the copayment assistance program, *you will receive a mailing* from SaveonSP describing the program along with enrollment information. If you are prescribed an eligible drug for the first time, *Accredo will connect you with SaveonSP* to complete your enrollment into copay assistance.

*Id.* at 2 (emphasis added).

When the WGA Plan subsequently amended the WGA SPD, it incorporated the SaveOn Program into the updated WGA SPD. The WGA SPD states:

> **The specialty drugs included in the program are non-essential health benefits under the Plan and the cost of those specialty drugs will not be applied toward satisfying your Coinsurance Network Out-of-Pocket Limit or the ACA Out-of-Pocket Limit in all cases, whether or not you choose to participate in the copayment assistance program.**

*Id.* at 2-3; *accord* Ex. 1 at 147 (emphasis added). The WGA SPD also discloses, on a page entitled in all-caps, "EXPENSES THAT DO NOT ACCUMULATE TO THE ACA IN-NETWORK OUT-OF-POCKET LIMIT," that:

> **Under the Plan, each year, you are responsible for paying the following expenses out of your own pocket. These expenses do not accumulate towards the ACA Network OOP Limit or the Coinsurance OOP Limit: …**
>
> **• The cost of drugs included in the SaveonSP program, including the applicable cost share amounts, whether or not you choose to participate in the program[.]**

---

published websites."); *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. Sept. 30, 2011) ("[I]t is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss.").

Ex. 1 at 67 (emphasis added). And the WGA SPD states: "The nature and extent of benefits provided by the Writers' Guild-Industry Health Fund and the rules governing eligibility are *determined solely and exclusively* by the Trustees of the Fund." *Id*. at v (emphasis added).

While Gurwitch alleges that, upon switching to WGA-sponsored BCBS insurance in January 2022, she was "deprived of the benefit of the patient copay assistance that AstraZeneca 360™ offers and forced to incur excess healthcare expenses," Am. Compl. ¶ 19, she alleges no facts concerning her treatment or her healthcare expenses post-dating the coverage switch.

## II. The Operation and Effect of the SaveOn Program on Gurwitch's Healthcare Benefits Is Fully Disclosed in Her Plan Documents.

The Amended Complaint says that, because SaveOnSP, Express Scripts, and Accredo set up the SaveOn Program to "capitalize" on copayment assistance funds offered by pharmaceutical manufacturers, they have "inflated" the copayments of "targeted patients" to bill back pharmaceutical manufacturers. *Id.* ¶ 112. A "targeted patient" is purportedly charged "the same inflated copay" regardless of whether they enroll in the SaveOn Program, and that copayment is not applied to the patient's annual cost-sharing limit. *Id.* ¶ 113; *see also id.* ¶¶ 151-56 (alleging that, because SaveOnSP's copayment assistance does not count toward cost-sharing limits, participants pay more in the long run due to the lack of progression toward those limits). Yet Gurwitch does not claim she paid a single "inflated copayment"—or any copayment—at any time, in connection with the SaveOn Program. Indeed, she does not allege any facts concerning any healthcare expenses she has incurred as a participant in the WGA Plan.

The Amended Complaint goes so far as to allege that SaveOnSP, Express Scripts, and Accredo somehow hid from patients that medications within the SaveOn Program were not counted toward their ACA cost-sharing limit. *Id.* ¶¶ 116-20. But this cannot be true as to Gurwitch (or any participant in the WGA Plan) because—again—the WGA SMM and WGA SPD expressly

state that:

> [T]he cost of drugs included in the program will not be applied toward satisfying the Participant's out-of-pocket maximum (either the Coinsurance Network Out-of-Pocket Limit or the ACA Out-of-Pocket Limit) in all cases, whether or not you choose to participate in the program.

Ex. 1 at 2-3; Ex. 2 at 147; *see also id.* at 67 (containing a similar disclosure on a single page entitled "EXPENSES THAT DO NOT ACCUMULATE TO THE ACA IN-NETWORK OUT-OF-POCKET LIMIT").

### III. While Copayment Assistance Funds Offered by Pharmaceutical Manufacturers Are at the Core of the SaveOn Program, Those Manufacturers Have Not Been Deceived by the SaveOn Program.

Moreover, the pharmaceutical manufacturers who offer copayment assistance were not deceived. The Amended Complaint asserts a "diversion" of copayment assistance from pharmaceutical companies, who manufacture and promote their prescription medications for profit, to health plans, who foot the bill. Am. Compl. ¶ 124. But the Amended Complaint also admits that multiple pharmaceutical manufacturers have adjusted the terms of service of their copayment assistance programs to make patients whose plans adopt the SaveOn Program ineligible for their copayment assistance programs. *Id.* ¶¶ 128-32. These sophisticated businesses could not have done so without knowledge of the SaveOn Program and how it operates. This information was readily available to them because as noted above, *supra* at 5-7, the WGA Plan's adoption of the SaveOn Program was disclosed in detail to plan participants in multiple plan documents, and those documents are publicly available.

### STANDARD OF REVIEW

Three standards of review matter for the arguments: Rule 12(b)(1), Rule 12(b)(6), and Rule 9(b). We take each in turn.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*. As part of this burden, a plaintiff must establish standing to sue. *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 84 (2d Cir. 2014). This requires a plaintiff to "allege facts that affirmatively and plausibly suggest that it has standing to sue and courts need not credit a complaint's conclusory statements without reference to its factual context." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021) (quotations omitted); *see also Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) ("[A]rgumentative inferences favorable to the party asserting jurisdiction should not be drawn."). The fact that a suit is a class action adds nothing to the question of standing; it is the named plaintiff who must establish standing to pursue her claims. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court … may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

Separately, for a complaint to survive a motion to dismiss under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Bald assertions and conclusions of law will not suffice to avoid dismissal, nor will factual allegations that are wholly conclusory." *Allen v. Credit Suisse Secs. (USA) LLC*, 895 F.3d 214, 221 (2d Cir. 2018) (cleaned up). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And a motion to dismiss "should be granted 'where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 769). As with standing, in a putative class action, the focus of the Rule 12(b)(6) inquiry is on the named plaintiff, and if she fails to state a claim, the class action complaint must be dismissed. *Ferrenbach v. Uber Techs., Inc.*, 2019 WL 13212571, at *2 (E.D.N.Y. May 16, 2019); *Vaglica v. Reckitt Benckiser LLC*, 699 F. Supp. 3d 200, 205-06 (E.D.N.Y. 2023).

Lastly and relatedly to Rule 12(b)(6), because the Amended Complaint alleges mail and wire fraud as RICO predicates, the Amended Complaint must satisfy the heightened pleading requirements set forth by Federal Rule of Civil Procedure 9(b) in pleading those purported frauds. *Li Jun An v. Hui Zhang*, 2013 WL 6503513, at *4 (S.D.N.Y. Dec. 6, 2013) ("To the extent that any predicate acts sound in fraud, the pleading of those acts must satisfy the particularity requirements of Rule 9(b)."). Rule 9(b) requires that allegations of fraud "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, a complaint must "specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (quotation omitted).

## ARGUMENT

## II. Gurwitch Does Not Have Standing to Bring This Suit Because She Has Not Demonstrated That She Suffered a Concrete, Particularized Injury Caused by Defendants' Conduct.

This case should be dismissed for lack of subject matter jurisdiction because Gurwitch has not shown a concrete, particularized injury fairly traceable to Defendants' conduct. The "irreducible constitutional minimum of standing consists of three elements" and requires a plaintiff invoking federal jurisdiction to establish that she: "(1) suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation omitted). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id*. (cleaned up). And in putative class actions like this one, "named class plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 199 (2d Cir. 2005) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *see also Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 553 (S.D.N.Y. 2016) ("In the class action context, … the relevant legal entity for determining whether Article III standing is proper is the named plaintiff(s), not the proposed class.").

Gurwitch fails to show injury because she alleges no facts demonstrating an individual loss. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To show injury on the theory advanced in the Amended Complaint, Gurwitch must allege facts demonstrating that (a) she personally incurred additional medical expenses under a commercial health plan that she would not have incurred otherwise (b) because specialty drugs in the SaveOn Program are not expenses that count toward patient cost-sharing limits. Am. Compl. Fig. A & 28 (illustrating the alleged injury at issue and describing it in the context of defining the putative class). In other words, Gurwitch must show that she is worse off because of the way medical expenses are applied toward cost-sharing limits under her plan. *See, e.g.*, *McNamara v. City of Chi.*, 138 F.3d 1219, 1221 (7th Cir. 1998) (collecting cases) ("A plaintiff who would have

been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court."); *Liberty Glob. Logistics LLC v. U.S. Mar. Admin.*, 2014 WL 4388587, at *6 n.3 (E.D.N.Y. Sept. 5, 2014) (finding plaintiff lacked standing when it would have been "left … no better off" than had defendant not acted in the first place).

Gurwitch has not alleged facts showing whether or how she is worse off because of the conduct she complains of. She alleges no information concerning any interaction with any Defendant and no information concerning her out-of-pocket medical expenses after she joined the WGA Plan in January 2022. Instead, Gurwitch offers only a threadbare, conclusory allegation that she was "forced to incur excess healthcare expenses." Am. Compl. ¶ 19; *see Schwartz v. HSBC Bank USA, N.A.*, 750 F. App'x 34, 36 (2d Cir. 2018) (in a putative class action, a named plaintiff's conclusory allegations of personal harm are insufficient to survive a motion to dismiss). Something more is essential, because under the theory of injury here, a loss is not a given. This is because Gurwitch alleges that the cost-sharing limit caps a policyholder's annual financial responsibility for medical expenses after which point she pays $0. *Id.* ¶ 48. Thus, for example, if Gurwitch capped out regardless of how specialty medications are counted toward the cap—*i.e.*, before and after she joined the WGA Plan—she suffered no loss at all, as her out-of-pocket healthcare expenses capped out regardless of anything having to do with the conduct she alleges, so she is no worse off because it. *McNamara*, 138 F.3d at 1221; *Liberty Glob. Logistics*, 2014 WL 4388587, at *6 n.3. That the Amended Complaint is replete with allegations about hypothetical costs incurred by unnamed putative class members changes nothing because Gurwitch bears the burden of showing that she

herself has standing. *Central States*, 433 F.3d at 199; *Catalano*, 167 F. Supp. 3d at 553.[5]

Gurwitch also fails to allege facts showing an injury fairly traceable to the conduct of any Defendant. *Spokeo*, 578 U.S. at 338. To meet this bar: "[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up). When a complaint "includes no factual allegations about how [defendants' conduct] affected plaintiffs individually," it "never connect[s] the dots between [defendants' conduct] and their alleged injury necessary to show causation" under Article III. *Heidel v. Governor of N.Y. State*, 2023 WL 1115926, at *2 (2d Cir. Jan. 31. 2023) (quotation omitted).

Gurwitch's Amended Complaint is akin to the *Heidel* complaint because she alleges no facts concerning how any of the complained-of conduct impacted her individually—or even applies to her individually. She alleges no personal contact or interaction with any Defendant. And it is not clear how—even if her Amended Complaint included such allegations—she could "connect the dots" between Defendants' conduct and her alleged injury. *Id.* This is because the "nature and extent of benefits provided" to her under the WGA Plan is "determined solely and exclusively" by the plan sponsor—WGA. Ex. 1 at v. The "nature and extent" of those benefits necessarily includes prescription drug benefits and the manner in which those benefits are applied toward cost-sharing limits under the WGA Plan. So Gurwitch cannot allege that Defendants caused

---

[5] In Paragraph 34 of the Amended Complaint (in the context of alleging her claims are "typical" of claims of class members), Gurwitch asserts that she and putative class members "will show" that they paid "more out of pocket for their healthcare than they would have in the absence of SaveOnSP, Express Scripts, and Accredo's unlawful conduct." *Id.* But speculation about what the evidence may be at some point does not relieve Gurwitch of her burden to allege facts now that demonstrate she suffered an injury-in-fact. *See Spokeo*, 578 U.S. at 338 (at the pleading stage, a plaintiff must "clearly allege facts demonstrating" standing (cleaned up)).

her any loss. Defendants do not control her benefits, and her health plan—which does—is a third party not before the court. *Lujan*, 504 U.S. at 560.

Since Gurwitch fails to allege facts showing she personally suffered a loss, she has not shown an injury in fact. And because she fails to explain how the alleged conduct affected her individually, she has not shown causation. For both reasons, the Amended Complaint should be dismissed for lack of subject matter jurisdiction.

## II.  Gurwitch Fails to State a Claim Under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

### A.  Plaintiff Has Not Met the High Burden of Pleading a Claim Under RICO, Which Was Not Intended for Use Against Legitimate Businesses Making Legitimate Business Decisions.

RICO, part of the Organized Crime Control Act of 1970, was established to combat the growing influence of organized crime in the United States and its infiltration into legitimate businesses, because then-current laws were insufficient to combat those sophisticated criminal networks. *See United States v. Turkette*, 452 U.S. 576, 588 (1981); *United States v. Angelilli*, 660 F.2d 23, 32 (2d Cir. 1981). It was not—and is still not—intended for use against legitimate businesses making legitimate business decisions, as Gurwitch seeks to use it here. *See Ray v. Spirit Airlines, Inc.*, 126 F. Supp. 3d 1332, 1341 (S.D. Fla. 2015)*, aff'd*, 836 F.3d 1340 (11th Cir. 2016) (explaining that "common business relationships do not, in and of themselves constitute racketeering 'enterprises' for the purposes of RICO liability under 18 U.S.C. § 1962(c)"). Over the course of 216 paragraphs spread across 60 pages of an Amended Complaint and another 19 pages of a RICO Statement, Gurwitch omits essential facts that undermine her entire Amended Complaint and certainly her RICO claims. Specifically, Gurwitch fails to cite, let alone say anything about, her health plan's documents and the explicit disclosures that her plan made to her in these plan documents about the SaveOn Program. *See supra* at 5-7.

Gurwitch's omission is troubling. Whatever the reason for the omission, it is clear from the plan documents that Gurwitch's allegations of "materially misleading statements," Am. Compl. ¶ 174, and affirmative and fraudulent concealment, *id.* ¶ 171, are empty. Her plan documents belie all that she now claims was false, fraudulent, and concealed. On this landscape, no RICO claim can lie.

As set forth in further detail below, Gurwitch's RICO claim fails for at least five reasons:

- Gurwitch lacks statutory standing under RICO;

- Gurwitch has not alleged predicate fraudulent acts;

- Gurwitch cannot show an intent to defraud;

- Gurwitch has not alleged the existence of a RICO "enterprise" distinct from the alleged acts of racketeering activity; and

- Gurwitch has not adequately alleged that Defendants conducted the affairs of the RICO enterprise.

The burden of stating a civil RICO claim is necessarily difficult to satisfy because such claims are "an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Weitlauf v. Hopkins*, 2023 WL 2560831, at *9 (W.D.N.Y. Mar. 17, 2023) (Vilardo, J.) (quoting *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 297 (E.D.N.Y. 2017)). Civil RICO claims are such a potent weapon because "[t]he mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants." *Sanchez v. ASA Coll., Inc.*, 2015 WL 3540836, at *5 (S.D.N.Y. June 5, 2015). And, as is the case with Gurwitch, "plaintiffs wielding RICO almost always miss the mark." *Weitlauf*, 2023 WL 2560831, at *9. Thus, courts have recognized their "obligation to scrutinize civil RICO claims early in the litigation," *Sanchez*, 2015 WL 3540836, at *5, in order "to flush out frivolous" attempts to state a RICO claim. *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).

**B.** **Gurwitch Lacks Statutory Standing Under RICO Because She Does Not Show That Defendants Proximately Caused an Injury to Her and Because She Is Not a Direct Purchaser of Defendants' Services.**

Statutory standing is an essential element that goes to the merits of any RICO claim. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 129-30 (2d Cir. 2003) (Sotomayor, J.), *abrogated on other grounds by*, *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016); *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). "To satisfy RICO's standing requirements, a plaintiff must demonstrate, '(1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation.'" *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990)). Gurwitch cannot show standing because she alleges no injury proximately caused by Defendants' actions. And, relatedly, she lacks standing because she is not a direct purchaser of Defendants' goods or services.

Gurwitch has not shown any injury to business or property caused by any alleged violation; she fails to allege any facts showing an injury in the first place. *See supra* at 9-11 (explaining Gurwitch's failure to show Article III standing). She purports to allege facts concerning a hypothetical patient's hypothetical expenses, in Paragraphs 157 through 159, and how those expenses count toward the ACA's cost-sharing limit. But that is neither here nor there. Gurwitch must personally establish her own claim. *Vaglica*, 699 F. Supp. 3d at 205-06; *Ferrenbach*, 2019 WL 13212571, at *2.

Turning to causation, RICO's causation requirement is stricter than Article III's causation requirement. *Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, 88 F.4th 344, 353 (2d Cir. 2023). To state a claim under RICO, Gurwitch must show that "a RICO predicate offense not only was a 'but for' cause of [her] injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (quotation omitted). Here, Gurwitch has not adequately alleged

an injury proximately caused by any of the Defendants' actions. She makes a conclusory allegation that she was "forced to incur excess healthcare expenses." Am. Compl. ¶ 19. But she alleges no facts that draw a connection between that bare allegation and the Defendants' actions.

Gurwitch's failure to show proximate causation is unsurprising. Her relationship to the Defendants exists only because she purchased health benefits through the WGA Plan. *Id.* It is the WGA that selected Express Scripts to administer the Plan's pharmacy benefits and elected to participate in the SaveOn Program. *See supra* at 5-7. As a result, Gurwitch is two steps removed from Defendants, which precludes RICO standing under the indirect-purchaser rule first enunciated in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977).

Under that rule, developed in the context of the federal antitrust laws, "*indirect* purchasers who are two or more steps removed from the violator in a distribution chain may not sue" for relief. *Apple Inc. v. Pepper*, 587 U.S. 273, 279 (2019) (discussing authority). As another district court in this Circuit recently explained: "Every circuit to have considered the issue has held that the direct purchaser rule also applies to civil RICO actions, and that indirect purchasers therefore do not have standing to assert RICO claims." *In re Oral Phenylephrine Mktg. & Sales Pracs. Litig.*, --- F. Supp. 3d ----, 2024 WL 4606818, at *8 & n.6 (E.D.N.Y. Oct. 29, 2024) (cleaned up) (dismissing RICO claims brought by indirect purchasers); *see also, e.g.*, *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 616 (6th Cir. 2004) ("[I]ndirect purchasers lack standing under RICO and the antitrust laws to sue for overcharges passed on to them by middlemen[.]"); *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 855 (3d Cir. 1996) ("[A]ntitrust standing principles," including the rule "taught by *Illinois Brick*," "apply to RICO claims, thereby denying RICO standing to indirect victims."); *Carter v. Berger*, 777 F.2d 1173, 1177 (7th Cir. 1985) ("[The] *Illinois Brick* rule promotes enforcement [of RICO] and therefore applies to RICO, too."). To the extent Gurwitch

was harmed at all—although she alleges no harm—it is because of intervening steps in the supply chain, which she cannot tie to a direct purchase of goods or services from Defendants. As a result, Gurwitch may not sue Defendants under RICO and, for this additional reason, she lacks statutory standing.

Because Gurwitch has not established standing under the RICO statute, her claim fails and should be dismissed on this basis alone.

### C. Gurwitch Fails to Plead Predicate Acts of Racketeering or a Scheme to Defraud, Much Less with Particularity Under Rule 9(b).

In addition to statutory standing, to make out a substantive RICO violation, Gurwitch "must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Moss*, 719 F.2d at 17 (quotations omitted). Where, as here, the alleged pattern of racketeering activity rests on allegations of mail and/or wire fraud, Am. Compl. ¶ 204, a RICO plaintiff's allegations "are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004). "The elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018) (quotation omitted). "The gravamen of the offense is the scheme to defraud," and "[t]o make out such a scheme, a plaintiff must provide proof of a material misrepresentation." *Id.* (cleaned up).[6]

---

[6] Gurwitch additionally alleges "travel in interstate and foreign commerce in aid of a racketeering enterprise in violation of 18 U.S.C. § 1952" as a predicate act. Am. Compl. ¶ 204. But she fails to allege any "unlawful activity" under the Travel Act, 18 U.S.C. § 1952, or to mention the Travel Act beyond that singular reference. To state a successful Travel Act violation, a plaintiff must allege that a defendant "travels in interstate or foreign commerce or uses the mail or any facility

At the outset, there can be no allegation of fraud here because all of the components of the SaveOn program that Gurwitch now complains are fraudulent were expressly disclosed to her and other Plan members. The WGA SPD states:

> The specialty drugs included in the program are non-essential health benefits under the Plan and the cost of those specialty drugs will not be applied toward satisfying your Coinsurance Network Out-of-Pocket Limit or the ACA Out-of-Pocket Limit in all cases, whether or not you choose to participate in the copayment assistance program.

Ex. 1 at 147. The WGA SPD also discloses, on a page entitled in all-caps, "EXPENSES THAT DO NOT ACCUMULATE TO THE ACA IN-NETWORK OUT-OF-POCKET LIMIT," that:

> Under the Plan, each year, you are responsible for paying the following expenses out of your own pocket. These expenses do not accumulate towards the ACA Network OOP Limit or the Coinsurance OOP Limit: …
>
> • The cost of drugs included in the SaveonSP program, including the applicable cost share amounts, whether or not you choose to participate in the program ….

*Id.* at 67. And the WGA SMM further discloses:

> If you are currently taking a prescription drug that is on the list of the drugs that are eligible for the copayment assistance program, you will receive a mailing from SaveonSP describing the program along with enrollment information. If you are prescribed an eligible drug for the first time, Accredo will connect you with SaveonSP to complete your enrollment into copay assistance.

Ex. 2 at 2.

At its core, Gurwitch's conclusory allegations of a scheme to defraud are supported by no plausible allegations of false statements. Though Gurwitch alleges that Accredo and Express

---

in interstate or foreign commerce, with the intent to" distribute the proceeds of, commit, or "otherwise promote, manage, [or] establish . . . any unlawful activity." *Id.* "Unlawful activity" means: (1) any business enterprise that involves narcotics, controlled substances, prostitution offenses, based on the laws of the State where the violation is committed, or, if the Federal excise taxes have not been paid, gambling or liquor; (2) "extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States; or (3) violations of the Bank Secrecy Act and some money laundering offenses "indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 …." *Id.* Gurwitch pleads none of this, so the alleged predicate acts relying on the Travel Act should be dismissed.

Scripts committed "hundreds, if not thousands, of instances" of mail and wire fraud, *id.* ¶ 204, the Complaint fails to allege even one "material misrepresentation with the requisite particularity" under Rule 9(b). *Williams*, 889 F.3d at 126.

Start with Accredo. *See Broccoli v. Ashworth*, 2023 WL 2664770, at *13 (S.D.N.Y. Mar. 28, 2023) ("[B]ecause Plaintiff must adequately plead that each individual defendant has committed racketeering activity, the Court must analyze Plaintiffs allegations as to each individual defendant, rather than the collective 'scheme' when determining predicate unlawful acts."); *see also DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("The requirements of section 1962(c) must be established as to each individual defendant."). Gurwitch conclusorily alleges that "Accredo falsely told targeted patients that their prescription drug claims had been rejected." Am. Compl. ¶ 202; *see also* Doc. 18 ("RICO Statement") at 6.[7] Yet Gurwitch does not identify "the dates and the times those statements were made or the identities of the recipients"—much less that Accredo ever falsely told *her* that her prescription claim had been rejected. *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 422 (E.D.N.Y. 2017) ("[P]laintiffs have not asserted that defendant made any misrepresentations at all, let alone any misrepresentations *to plaintiffs.*" (emphasis in original)); *see, e.g.*, *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 102 (D. Conn. 2014), *aff'd sub nom. Williams v. Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018) (dismissing RICO claim when "the Plaintiffs have not even alleged how they were defrauded"); *Rubenstein v. Nat'l Ass'n of Realtors*, 2021 WL 3146249, at *4 (D. Conn. July 26, 2021) (dismissing RICO claim, in part, because "neither the case statement nor the complaint allege that the two plaintiffs in this action were so misled by their own buyer brokers"). In fact, Gurwitch does not allege that

---

[7] "[T]he Second Circuit Court of Appeals directs that a RICO case statement should be read together with a complaint on a motion to dismiss." *Mackin v. Auberger*, 59 F. Supp. 3d 528, 541 (W.D.N.Y. 2014).

she had any contact with Accredo or Express Scripts at any point in time. *See* Am. Compl. ¶ 19.

Gurwitch's other allegations against Accredo fail for the same reason. Gurwitch alleges that Accredo tells manufacturer copay assistance programs that patients owe thousands of dollars in copays, "while SaveOnSP, Express Scripts, and Accredo tell targeted patients who have enrolled in the SaveOn Program that their copay is $0." RICO Statement at 10; *see also* Am. Compl. ¶¶ 112–13 ("Accredo represents to the patient copay assistance program that the targeted patient is responsible for that inflated copay … Yet SaveOnSP, Express Scripts, and Accredo … assure patients that their actual responsibility will be $0."). Because "these intractably contradictory statements cannot both be true," Gurwitch says that "at least one of them must be false." *Id.* Even if that were the case, neither supports a RICO predicate act. If the former statement is false, Gurwitch again does not come close to pleading facts about these false statements with any degree of particularity, *e.g.*, when, where, who, and what. *See Williams*, 889 F.3d at 124. If the latter statement is false, "[s]uch 'group pleading' does not comply with the requirements of RICO or the particularity standards of Rule 9(b)." *Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009); *see, e.g.*, *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (declaring that "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'").[8]

Gurwitch's allegations against Express Scripts are also deficient. Aside from the impermissible group allegations mentioned already, Gurwitch does not allege that Express Scripts made any material misrepresentations to anyone outside the alleged enterprise let alone to Gurwitch. *See* RICO Statement at 3, 6 (alleging that Express Scripts transmitted "false" rejections

---

[8] For this reason, Gurwitch's collective allegation that "Defendants also market the program to patients as a 'cost-saving healthcare solution' that helps patients" cannot support a RICO predicate act as to Accredo or Express Scripts. Am. Compl. ¶ 173.

to co-defendants Accredo and SaveOnSP); Am. Compl. ¶ 88.

In short, the Amended Complaint "lacks the particularized allegation of an underlying 'scheme to defraud' animated by a material misrepresentation." *Williams*, 889 F.3d at 125. And "[w]ithout an underlying scheme to defraud," Gurwitch has "not alleged a pattern of racketeering" by Accredo or Express Scripts. *Id.* at 126. Instead, she has alleged ordinary, legitimate business communications.

Further, Gurwitch alleges *no facts* showing that she lost any money or property. *See Ciminelli v. United States*, 598 U.S. 306, 312 (2023) (a RICO plaintiff must show the deprivation of a traditional property right; specifically, that there was fraud, and that the object of the fraud was the plaintiff's money or property); *see also Sec. & Exch. Comm'n v. Govil*, 86 F.4th 89, 105 (2d Cir. 2023) (holding that fraud victims must have "suffered pecuniary harm").

At most, Gurwitch alleges that she faced the "depriv[ation] of the benefit of the patient copay assistance that AstraZeneca 360™ offers." Am. Compl. ¶ 19. But even if she had alleged a pecuniary harm, Gurwitch cannot plead the deprivation of a traditional property interest in this context because she—like any other member of employer-sponsored health plan—"ha[s] no *ex ante* right to a certain level of prescription drug pricing." *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 685 (S.D.N.Y. 2018) (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)). Knowing how the WGA Plan determined drug pricing and implemented those decisions through Express Scripts and Accredo is more akin to the "potentially valuable economic information necessary to make discretionary economic decisions" that *Ciminelli* warned against. 598 U.S. at 310; *see also Martinez v. JPMorgan Chase Bank, N.A.*, 178 F. Supp. 3d 184, 189 (S.D.N.Y. 2016) (a RICO plaintiff must have "a formal legal interest" in allegedly lost money or property to have a "cognizable" injury under the statute).

### D. Gurwitch Fails to Allege a Substantive RICO Violation Because She Has Not Pleaded a Strong Inference of Fraudulent Intent.

"In addition to alleging the particular details of a fraud, the plaintiff[] must allege facts that give rise to a strong inference of fraudulent intent." *First Cap. Asset Mgmt.*, 385 F.3d at 179 (cleaned up); *see also Cohen*, 711 F.3d at 359 (A RICO plaintiff must "plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." (quotation and alteration omitted)).

For Gurwitch to show a "strong inference of fraudulent intent," she must either (1) "alleg[e] facts showing a motive for committing fraud and a clear opportunity for doing so" or (2) "identify[] circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Gerstenfeld v. Nitsberg*, 190 F.R.D. 127, 131 (S.D.N.Y. 1999) (cleaned up; collecting authority).

Fatal to Gurwitch's claims is the fact that Gurwitch's publicly available health plan documents expressly disclose that the cost of drugs in the SaveOn Program does not count toward applicable cost-sharing limits *and* that Accredo (and SaveOnSP) will contact plan participants to enroll them in the SaveOn Program. *See supra* at 5-7. Such disclosure defeats *any* inference of fraudulent intent. *See In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 582 (S.D.N.Y. 2007), *aff'd sub nom.*, *Pappas v. Bank of Am. Corp.*, 309 F. App'x 536 (2d Cir. 2009) (holding that defendant's disclosed explanation for higher appraisal value "undercut[] any inference of [its] fraudulent intent"); *Pu v. Charles H. Greenthal Mgmt. Corp.*, 2010 WL 774335, at *3 (S.D.N.Y. Mar. 9, 2010) (notice and disclosure of complained-of activity "belies the existence of any pernicious scheme" to defraud); *In re Loral Space & Commc'ns Ltd. Sec. Litig.*, 2004 WL 376442, at *10 (S.D.N.Y. Feb. 27, 2004) (no strong inference of scienter in securities fraud suit where defendants' warnings and disclosures "undercut the plaintiffs' speculation that the defendants were consciously

attempting to defraud investors").

All Gurwitch alleges is that Express Scripts was motivated to increase profits by making manufacturer copayment assistance funds a way for its health plan sponsor clients to reduce their costs. *E.g.*, Am. Compl. ¶¶ 62, 144-45, 199. Even if true, an "assertion that the defendants were motivated by large profits is … insufficient to infer a motive and opportunity for fraud, *or* conscious behavior by defendants in furtherance of such fraud[.]" *Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*, 2009 WL 928718, at *6 (E.D.N.Y. Mar. 31, 2009) (quotation omitted; emphasis added). That is a legitimate business activity, not fraud.

### E.     Gurwitch Has Not Adequately Pleaded the Existence of an "Enterprise" Within the Meaning of RICO.

Gurwitch's RICO claim also fails because she does not adequately allege the existence of an "enterprise" separate from the alleged racketeering. Gurwitch asserts that Defendants joined together to form an "association-in-fact" enterprise. Am. Compl. ¶ 197. To make out an "association-in-fact" enterprise, Gurwitch must allege an enterprise that (1) is "separate and apart from the pattern of activity in which it engages," and (2) has "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 667 (2d Cir. 2014) (cleaned up). Satifsying the first requirement "require[s] some distinctness between the RICO defendant and the RICO enterprise" and "depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 162-63 (2d Cir. 2001) (cleaned up); *see also Aerowest GmbH v. Freitag*, 2016 WL 3636619, at *3-*4 (E.D.N.Y. June 28, 2016) (a RICO plaintiff must plead more than that a group existed to commit fraud; the enterprise must exist separate from the predicate acts and apart from the racketeering activity).

Before addressing Gurwitch's allegations, related legal entities that do business together are not normally understood as distinct for the purposes of RICO liability. Because "[m]ost courts … reason[] that if a corporate defendant can be liable for participating in an enterprise comprised only of its agents—even if those agents are separately incorporated legal entities—then RICO liability will attach to any act of corporate wrong-doing and the statute's distinctness requirement will be rendered meaningless." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 492 (6th Cir. 2013) (citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994)); *see also Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 400 (7th Cir. 2009) (noting that allegations which "describe the ordinary operation of a garden-variety [business] arrangement" between a health insurer and a nonprofit "is not what RICO penalizes"). Gurwitch has not alleged any actions showing that Defendants or their employees "were associated in any manner apart from the activities" of a PBM (Express Scripts), a specialty pharmacy (Accredo), and a copay solution administrator (SaveOnSP). *Atkinson v. Anadarko Bank & Tr. Co.*, 808 F.2d 438, 441 (5th Cir. 1987).

But even she had, Gurwitch does not surpass the bar of distinctness because the Amended Complaint is clear that Defendants—allegedly—joined together solely to engage in the alleged racketeering activity, which is definitionally insufficient to allege a RICO enterprise. Indeed, while Gurwitch's RICO Statement purported to claim that "the SaveOnSP Copay Assistance Fraud Enterprise's activities include, but are not limited to, the alleged acts of racketeering activity," she fails to explain how this is so, without reference to actions claimed to be part and parcel of the alleged racketeering activity. RICO Statement at 16-17; *see also JGIAP RH 160 LLC v. CRI Holding Corp.*, 2023 WL 5979125, at *14 (E.D.N.Y. Aug. 16, 2023) (collecting cases) ("[A] RICO plaintiff must allege facts to plausibly demonstrate that the enterprise, as a whole, was in some

way different from and had some existence beyond its constituent members and the underlying pattern of racketeering activity.").

### F.     Gurwitch Has Not Adequately Alleged That Defendants Conducted the Affairs of the RICO Enterprise.

The RICO claim against Express Scripts and Accredo also fails because Gurwitch does not adequately allege that either entity "conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs." *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993) (emphasis in original). The Supreme Court made clear "that as both a noun and a verb in this subsection 'conduct' requires an element of direction," meaning that Express Scripts and Accredo must have exercised direction in shaping the enterprise's affairs—not just their own—to satisfy the "operation or management test" adopted by the Court. *Id.* at 178-79 (internal quotations omitted).

Courts in the Second Circuit routinely apply the holding in *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013), in determining whether a plaintiff has adequately pleaded that the defendants conducted the affairs of the enterprise.[9] In *United Food*, the Seventh Circuit held that RICO plaintiffs must do more than allege a commercial relationship between parties to show that they conducted the affairs of a RICO enterprise. RICO plaintiffs must plead facts that would permit a court to "infer that the[] communications or actions were undertaken on behalf of the *enterprise* as opposed to on behalf of [individual defendants] in their individual capacities, to advance their individual self-

---

[9] *See*, *e.g.*, *D. Penguin Bros.*, 587 F. App'x at 668 (even where defendants "worked together in some respects to steal plaintiffs' funds," the pleadings still failed to create a "plausible inference that they did so to advance the political agenda of their purported enterprise or for any shared purpose"); *Abbott Lab'ys v. Adelphia Supply USA*, 2017 WL 57802, at *8-*9 (E.D.N.Y. Jan. 4, 2017) (finding defendants did not conduct affairs of enterprise even where parties cooperated and communicated); *Oriska Ins. v. Avalon Gardens Rehab. & Health Care Ctr., LLC*, 2019 WL 4195267, at *11-*12 (N.D.N.Y. Sept. 4, 2019) (same).

interests." *Id*. at 854 (emphasis added).

In *United Food*, the plaintiff alleged that Walgreens and the pharmaceutical manufacturer Par formed an enterprise for the purpose of "profiting from illegally substituting Par's more expensive dosage [of medications] for the cheaper dosage forms actually prescribed," in violation of FDA regulations. *Id.* at 853. Despite the Seventh Circuit's finding that Walgreens and Par had ongoing communications and that their activities were "by all appearances illegal," it held that the allegations in the complaint were not sufficient to show that the companies were acting on behalf of an enterprise as opposed to on behalf of the individual companies. *Id.* at 855-56. The Court reasoned that the complaint did not allege that officials from either company were involved in the management or operations of the other and that the relationship and communications between the companies "show[ed] only that the defendants had a commercial relationship, not that they had joined together to create a distinct entity for purposes of improperly filling [medications]." *Id.*

The same is true here. Nothing in the Amended Complaint or Civil RICO Statement "reveals how one might infer that the[] communications or actions were undertaken on behalf of the enterprise as opposed to on behalf of [Express Scripts and Accredo] in their individual capacities, to advance their individual self-interests." *Id.* at 854. Instead, the facts pleaded simply detail actions that were undertaken by Express Scripts and Accredo in the normal course of their businesses and pursuant to normal commercial relationships with one another, SaveOnSP, and the insurers, and health plans. As in *United Foods*, Gurwitch makes no allegations that Express Scripts or Accredo participated in the affairs or management of SaveOnSP, or vice versa. The factual allegations regarding the interactions between the defendants and the actions taken by them shows only that the defendants maintain a typical, commercial relationship with one another, not that they banded together to form an enterprise for the purpose of misleading patients. Therefore, Gurwitch

"fails to allege that the defendants engaged in the conduct of an enterprise, not simply their own affairs, and accordingly fails to state a RICO claim." *Abbott Lab'ys*, 2017 WL 57802, at *8-*9.

## III. Gurwitch Has Not Stated a Claim Under ERISA Because She Cannot Show That Express Scripts Was Acting as a Fiduciary When Taking the Actions Alleged.[10]

Gurwitch's claims under ERISA must be dismissed, because under settled law and the facts that the Court must accept as true at this stage, Express Scripts neither owed nor breached any fiduciary duty to the SaveOn Program. Rather, Express Scripts applied the SaveOn Program in accordance with the benefit design WGA adopted, as part of the WGA's strategy for reducing health care costs. Gurwitch's allegations that Express Scripts owed and breached a fiduciary duty are directed to the design of the SaveOn Program itself. Adopting a prescription benefit structure that specifies what drugs are covered, on what terms, and with what copayments is the epitome of a plan design function and does not give rise to a fiduciary duty.

### A. Gurwitch Fails to State a Claim Under ERISA Because the Acts Alleged Are Part of the Plan Design and Are Not Fiduciary in Nature.

"In every case charging breach of ERISA fiduciary duty, … the threshold question is … whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Fiduciary status under ERISA arises when an entity "exercises any discretionary authority or discretionary control respecting management of such plan." *Massaro v. Palladino*, 19 F.4th 197, 212 (2d Cir. 2021) (quoting 29 U.S.C. § 1002(21)(A)). Gurwitch does not and cannot allege that Express Scripts had any discretionary authority and so cannot establish a fiduciary duty on that basis.

Gurwitch's complaint is directed toward the terms of the plan WGA adopted, which is a matter of plan design that is not a fiduciary function but, rather, a non-fiduciary settlor function. It

---

[10] Count I is asserted against Express Scripts and SaveOn only.

is well-established that an entity does not act as a fiduciary when it "makes a decision regarding the *form or structure* of the plan such as who is entitled to receive plan benefits and in what amounts, or how such benefits are calculated." *Massaro*, 19 F.4th at 212 (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999)) (emphasis in original; cleaned up); *see also Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *8 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009) (dismissing ERISA claims "relating to the design of the Plan," because "ERISA's fiduciary duty requirement simply is not implicated" for "a decision regarding the form or structure of the Plan") (quoting *Hughes*, 525 U.S. at 444).

Based on this rule, an entity does not act as a fiduciary when it creates a cost-saving benefit plan design, such as setting copayments. In *Saltzman v. Independence Blue Cross*, 384 F. App'x 107 (2d. Cir. 2010), the plaintiffs complained that the plan's formulary placed their medication in a tier that had a higher copayment.[11] The Second Circuit held that the plan was free to set "the terms of the plan, including the placement of drugs in the formulary," because although plaintiffs "had a right to prescription coverage based upon the terms of the Plan, [they] did not have a vested right as to the amount of the copayments." *Id*. at 109, 115 (cleaned up); *see also Larson v. United Healthcare Ins.*, 723 F.3d 905, 917 (7th Cir. 2013) (dismissing an ERISA breach of fiduciary duty claim based on copayments that plaintiff alleged were illegal, because plaintiff's challenge to these copayments "is a challenge to the *content* of the [plan]; decisions about the content of a plan are not themselves fiduciary acts") (quoting *Pegram*, 530 U.S. at 226) (emphasis in original).

This rule applies whether the claim is brought against a plan sponsor that adopted the plan

---

[11] A formulary is a "listing of medications for which an insurer or managed care organization provides coverage." *Saltzman*, 384 Fed. App'x 107 n.3. A "formulary is a plan document" because it defines benefits and copayments under the plan. *Id.* at 113.

or a PBM, such as Express Scripts,[12] that offered or executed the plan adopted by the sponsor. *See Moeckel v. Caremark, Inc.*, 622 F. Supp. 2d 663, 684 (M.D. Tenn. 2007) ("[a PBM's] execution of the plan design adopted by [a plan sponsor] is immune from fiduciary liability"); *Mulder v. PCS Health Sys., Inc.*, 432 F. Supp. 2d 450, 459 (D.N.J. 2006) ("The Court … finds no justification to impose upon [PBM] ERISA's fiduciary duties where none could be extended to [the plan]").

A PBM does not act as a fiduciary by offering a prescription plan program to its clients who adopt it into their benefit plans. For example, in *New York State Teamsters Council Health & Hospital Fund v. Centrus Pharmacy Solutions*, 235 F. Supp. 2d 123 (N.D.N.Y. 2002), the defendant PBM "recommended" to its benefit plan client a "preferred formulary program," whereby "participants would be encouraged to use cheaper, preferred, formulary drugs for which they would be responsible for paying a" lower co-payment than that applicable to non-formulary drugs. *Id*. at 125. The court held that the PBM did not act as a fiduciary under ERISA because the contract specified which drugs were covered and under what circumstances, and the PBM "could make recommendations for changes in the Fund's prescription drug program, but such recommendations had to be adopted by the Fund before being implemented." *Id*. at 127.

In *Mulder*, the plaintiff alleged that a PBM breached an ERISA fiduciary duty by placing on its standard formulary and preferred drug lists (PDL) those drugs whose manufacturers paid rebates to the PBM. 432 F. Supp. 2d at 455. As the court explained, the plan's adopted formulary was "designed to encourage the selection of particular drugs" to "control [the plan's] drug costs by structuring its plan in a way that enticed plan participants to purchase less expensive drugs." *Id*. at 458. The court concluded that the PBM was not acting as a fiduciary because the plan's

---

[12] "PBMs are in the business of managing pharmacy benefit plans so as to lower overall costs, and the overwhelming use of PBMs highlights their advantages." *In re Express Scripts, Inc., PBM Litig.*, 2008 WL 2952787, at *3 (E.D. Mo. July 30, 2008) (citation omitted).

"decision to adopt portions of the PCS PDL was a plan design decision regarding the makeup of the plan." *Id.; accord Moeckel*, 622 F. Supp. 2d at 687 (holding that PBM Caremark was not an ERISA fiduciary with respect to its "formulary design" activities because it was the employer's "decision to adopt Caremark's formulary program as a desired feature of certain portions of its plan"); *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 477 (7th Cir. 2007) (finding Caremark was not acting as a fiduciary when the plan "adopted Caremark's pre-existing formulary as a feature of its plan [and u]nder *Pegram*, the formulary program and drug-switching program were plan features not subject to fiduciary standards").

Finally, a PBM does not act as a fiduciary when it follows the benefit plan terms adopted by the plan because that is not a discretionary function. "Numerous courts have explained that when a service provider or PBM acts pursuant to the terms of a contract, it does not exercise discretionary authority and does not act as an ERISA fiduciary." *In re Express Scripts/Anthem*, 285 F. Supp. 3d at 679 (citing cases). As the Second Circuit explained, "when a PBM sets prices for prescription drugs pursuant to the terms of a contract, it is not exercising discretionary authority and therefore not acting as an ERISA fiduciary." *Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44, 49 (2d Cir. 2020) (citing *Pegram*, 530 U.S. at 226).

Each of Plaintiff's allegations attacks how the plan is designed (by the WGA Plan and not by Express Scripts), as described in more detail below. As a result, these allegations cannot give rise to a claim for breach of fiduciary duty under ERISA, as a matter of law.

### B. The Acts Alleged by Gurwitch Are Part of Plan Design and Thus Cannot Give Rise to a Claim for Breach of Fiduciary Duty.

As the basis of her ERISA claim, Gurwitch complains that Defendants: require participants to enroll in the SaveOn Program; fail to count copayments on drugs that are not characterized as "essential benefits" toward copayment limits; charge "inflated copays" to plans and to participants

who do not sign up; and cause plans to pay a portion of the cost of copayments. Am. Compl. ¶ 186. But WGA adopted these design features of the SaveOn Program as detailed in the WGA SPD.

This much Gurwitch acknowledges, admitting that the "SaveOn Program constitutes a benefit design …." *Id.* ¶ 154; *see also id.* ¶ 70 ("SaveOnSP identified the medications within those categories with the most generous patient copay assistance programs and carved them out of participating health plans' standard benefit design."). The WGA SPD, the governing document for Gurwitch's plan, details the terms of the SaveOn Program. And each of the components of the SaveOn Program that Gurwitch attacks in the Complaint is set forth in the WGA SPD and is part of the Plan itself.

In Paragraph 186 of the Complaint, Gurwitch alleges that Express Scripts acted as a fiduciary in five ways, none of which can give rise to an ERISA claim because they are plan design features that are not fiduciary functions. Taking each in turn, *first*, Gurwitch says that Express Scripts acted as a fiduciary by "failing to recognize copay amounts paid by patients for prescriptions subject to the SaveOn Program as counting toward the patient's annual cost-sharing balances." Am. Compl. ¶ 186(b). This alleged conduct is not a fiduciary function because it is a feature of plan design that is specifically provided for in the WGA Plan (and disclosed to all WGA Plan participants); *see supra* at 5-7 (setting forth the language in which the WGA Plan expressly provides that copayments for drugs included in the SaveOn Program do not count toward the copayment limit). Thus, the allegations in Paragraph 186(b) attack a plan term that is part of the plan design and cannot form the basis of a fiduciary duty as a matter of law.

*Second*, Gurwitch asserts that Express Scripts acted as a fiduciary by "paying … inflated copays for participants and beneficiaries in the SaveOnProgram, but charging those inflated amounts to those who do not sign up." Am. Compl. ¶ 186(d). But once again, the WGA Plan

expressly discloses that, under the SaveOn Program, copayments are modified at the point of sale and that as a result, copayments at point of sale for participants not enrolled in SaveOn are "likely to be higher than [they were] before [SaveOn] took effect." Ex. 1 at 147; *see also* Ex. 2 at 3 (same); *id.* at 2 ("Participants who do not participate in the program will be responsible for paying a higher copayment for certain specialty drugs …. The copayment will be based on the amount of any available manufacturer copayment assistance."). Thus, the allegations in Paragraph 186(d) do not give rise to a fiduciary duty as a matter of law.[13]

*Third*, Gurwitch says that Express Scripts acted as a fiduciary by "paying … a portion of the cost-sharing drug manufacturers require patients to make to be eligible for manufacturer copay assistance." Am. Compl. ¶ 186(e). Yet again, Gurwitch is attacking the design of the Plan. The WGA Plan states that the Plan will pay the portion of any copayment that manufacturers require be borne by participants:

> The manufacturer and/or other payments under the program cover the copayment required for these drugs, and there is no cost share charge to you. Even in circumstances where … a manufacturer assistance payment doesn't cover the full copayment, there is still no payment due from you.

Ex. 1 at 147; Ex. 2 at 1 (same).[14]

---

[13] Moreover, Gurwitch lacks standing to assert that Defendants acted wrongfully by charging higher copays to persons who did not sign up for the SaveOn Program unless she is such a person, because she must show personal injury to herself caused by the alleged conduct. *See supra* at 9-13. "There is no ERISA exception to Article III." *Thole v. U. S. Bank N.A*, 590 U.S. 538, 547 (2020). Here, Gurwitch can assert no injury based on how the SaveOn Program is applied to persons who did not participate in the program, because she alleges she did participate in it. Am. Compl. ¶ 19.

[14] This allegation faces the same standing hurdles, because Gurwitch routinely fails to connect the dots between the alleged conduct and anything that happened (or did not happen) to her. *See supra* at 12-13. Gurwitch does not allege that the AstraZeneca copayment program in which she was enrolled required participants to make any payments. Gurwitch also does not allege how she—or any plan participant—was injured by the Plan paying the share of the cost for which the participant would otherwise be responsible, thereby relieving participants of the obligation to make payments that the manufacturer copayment assistance payments do not cover, *e.g.*, payments that the participants would have made absent the SaveOn Program.

*Fourth*, Gurwitch says Express Scripts acted as a fiduciary by "contacting participants and beneficiaries by letter and by phone to instruct them to sign up for SaveOnSP." Am. Compl. ¶ 186(c). This allegation cannot state a claim because contacting plan participants to instruct them to sign up for a Plan program is a ministerial function and not a discretionary function that could give rise to a fiduciary duty. U.S. Department of Labor regulations provide that "a person who performs purely ministerial functions … for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan" or plan assets. 29 C.F.R. § 2509.75-8. The regulation lists the types of "administrative functions" that do not give rise to a fiduciary duty, including "[p]repare employee communications material" and "[o]rient[] new participants and advis[e] participants of their rights and options under the plan." *Id.* at D-2 Q ¶¶ 3, 7.

In *New York State Teamsters Council Health & Hospital Fund*, the court relied on this regulation to hold that a prescription drug manager was not a fiduciary: "Defendant was merely performing ministerial tasks virtually identical to those set forth in 29 C.F.R. 2509.75-8 within a framework of policies made by the Fund and, therefore, is not an ERISA fiduciary." 235 F. Supp. 2d at 127. Similarly, here, contacting participants about a plan benefit is an administrative function which does not involve any discretionary or discretionary control respecting management of the plan, so that is not a fiduciary function. And it is provided for in the Plan:

> If you are currently taking a prescription drug that is on the list of the drugs that are eligible for the copayment assistance program, you will receive a mailing from SaveOnSP describing the program along with enrollment information. If you are prescribed an eligible drug for the first time, Accredo will connect you with SaveOnSP to complete your enrollment into copay assistance.

Ex. 2 at 2.[15]

*Finally*, Gurwitch claims that Express Scripts acted as a fiduciary by "denying pharmacy claims for prescriptions subject to the SaveOnSP Program when patients attempt[ed] to fill those prescriptions without enrolling in the Program." Am. Compl. ¶ 186(a).[16] This allegation does not state a plausible claim because, at most, Gurwitch alleges a "pharmacy pause" while the pharmacy attempts to enroll the participant in the SaveOn Program. Am. Compl. ¶¶ 88-90. Gurwitch acknowledges that participants can decline participation and pay the higher copayment at the point of sale. *Id.* ¶ 99 ("If a patient does not enroll in the SaveOn Program, SaveOnSP, Express Scripts, and Accredo charge the patient that same inflated copay."). But again, that is the Plan's design. Ex. 1 at 14; *see also* Ex. 2 at 2 ("While you are not required to participate in a copayment assistance program in order to receive coverage, Participants who do not participate in the program will be responsible for paying a higher copayment for certain specialty drugs"). Gurwitch does not allege facts giving rise to a plausible claim that Express Scripts, *contrary* to the terms of the Plan, *denies* claims of participants that do not enroll.

### C. Gurwitch's Allegations of Violation of ERISA Fail.

Gurwitch alleges that Express Scripts has allegedly violated a fiduciary duty under ERISA in four ways. *See* Am. Compl. ¶ 188. Gurwitch is wrong because in each instance Express Scripts was not acting as a fiduciary; hence, it could not have breached any fiduciary duty, as explained

---

[15] Again, Gurwitch never links up this allegation with anything that happened to her, failing to plead that Express Scripts contacted *her* to sign up for the SaveOn Program or made any representations to her; to the contrary she alleges she was already enrolled in the manufacturer assistance program before joining the WGA Plan. Am. Compl. ¶ 19; *see supra* at 12-13.

[16] This allegation fails because, like multiple others here, Gurwitch fails to allege any facts showing it applies to her. Plaintiff alleges that she was already signed up for manufacturer copayment assistance, Am. Compl.¶ 19, and nowhere does she allege that any of her claims were denied because of the SaveOn Program.

above and elaborated upon below. Moreover, even if assumed true, these alleged breaches do not somehow transform Express Scripts into an ERISA fiduciary: "[T]his court, as well as sister circuits, have held that wrongdoing in performing non-fiduciary services does not transform the alleged wrongdoer into a fiduciary." *Allen*, 895 F.3d at 225 (collecting cases).[17]

*First*, Gurwitch alleges that Express Scripts violated ERISA by "[f]ailing to count prescription drug copays toward [the] annual cost-sharing limit balance …." Am. Compl. ¶ 188(a). This allegation fails to state a claim because, as explained above, counting prescription copays toward the participant or beneficiary's annual cost-sharing limit is the Plan design and not a fiduciary function. *See supra* at 31. Further, even if there were an alleged fiduciary duty, there can be no breach of duty when Express Scripts followed the Plan's terms. ERISA requires a fiduciary to "discharge [its] duties with respect to a plan … in accordance with the documents and instruments governing the plan …" 29 U.S.C. § 404(a)(1)(D). "Thus, adherence to [negotiated plan] terms by a plan administrator cannot constitute a breach of its fiduciary duties, barring a grant of discretionary authority to the fiduciary." *Mohr-Lercara v. Oxford Health Ins., Inc.*, 2022 WL 524059, at *5 (S.D.N.Y. Feb. 22, 2022) (citation omitted) (holding that defendants were entitled to judgment as a matter of law because "defendants complied with the terms of the plan"). Regardless, even if this allegation could state a claim, Express Scripts did not do what Gurwitch alleges; the WGA Plan determined how copayments would be counted toward the cost-sharing limit. *See* Ex. at v ("The nature and extent of benefits provided by the Writers' Guild-Industry Health Fund and the rules governing eligibility are *determined solely and exclusively* by the Trustees of the Fund." (emphasis added)); *see also Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d

---

[17] Crucially, as to each of the alleged breaches, Gurwitch again fails to trace the conduct to any injury she personally suffered; a threshold standing issue that defeats jurisdiction to consider the merits of her claims. *See supra* at 12-13.

397, 399-400 (S.D.N.Y. 2002) (because "a court may consider documents … incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading" on a motion to dismiss, "[i]f a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss"). Regardless, this allegation fails to state a claim because, as explained above, counting prescription copays toward the participant or beneficiary's annual cost-sharing limit is the Plan design and not a fiduciary function. *See supra* at 31. Further, even if there were an alleged fiduciary duty, there can be no breach of duty when Express Scripts followed the Plan's terms. ERISA requires a fiduciary to "discharge [its] duties with respect to a plan … in accordance with the documents and instruments governing the plan …" 29 U.S.C. § 404(a)(1)(D). "Thus, adherence to [negotiated plan] terms by a plan administrator cannot constitute a breach of its fiduciary duties, barring a grant of discretionary authority to the fiduciary." *Mohr-Lercara v. Oxford Health Ins., Inc.*, 2022 WL 524059, at *5 (S.D.N.Y. Feb. 22, 2022) (citation omitted) (holding that defendants were entitled to judgment as a matter of law because "defendants complied with the terms of the plan").

Moreover, Gurwitch does not allege that she incurred copayments sufficient to reach the annual cost-sharing limit, however calculated, or indeed any copayments, so she has not alleged an injury-in-fact. As such, Gurwitch has failed to plead a plausible claim and lacks standing to make this argument. Because she does not allege that she has met her cost-sharing limit or that she would have met her cost-sharing limit had the copayments on Tagrisso (the AstraZeneca medication) been included, she has shown no injury. *See supra* at 9-11.

*Second*, Gurwitch asserts a violation of ERISA in that Express Scripts issued purportedly "wrongful pharmacy claim denials without proper notice to the patient …." Am. Compl. ¶ 188(b). These allegations do not state a claim because ERISA does not recognize a claim for any alleged

failure to give notice under 29 U.S.C. § 1133. Although § 1133 and the associated claims regulation require procedures for a "full and fair review," there is no claim or cause of action for alleged violation of this statute. *See Levi v. McGladrey LLP*, 2016 WL 1322442, at *3 (S.D.N.Y. Mar. 31, 2016) (citations omitted) (Section "1133 does not give rise to a private cause of action for compensatory or punitive relief."). Rather, the remedy for failing to provide a proper claims procedure is remand of the claim to the claims administrator. *See Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008) ("A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review."). Alternatively, under the claims regulation, the only remedy for an alleged failure to follow the claims procedures is that the claimant is deemed to have exhausted administrative remedies. 29 C.F.R. § 2560.503-1(l). As such, Gurwitch's allegation that Express Scripts failed to follow claims procedures does not give rise to any claim for relief or cause of action and so must be dismissed.[18]

*Third*, Gurwitch says that Express Scripts violated ERISA by "[i]nstructing plan participants and beneficiaries on how to obtain patient assistance from drug manufacturers by, in part, misrepresenting or omitting material facts and causing patients to make misrepresentations to drug manufacturers …." Am. Compl. ¶ 188(c). This allegation fails for at least two reasons. For one, Gurwitch fails to allege facts sufficient to state a plausible claim. Gurwitch never alleges that Express Scripts instructed her on how to obtain patient assistance from drug manufacturers, that Express Scripts made a single misrepresentation or omission of material fact to her, or that she made any misrepresentation to any drug manufacturer. In fact, Gurwitch alleges the exact opposite—she alleges she was *already enrolled* in Astra Zeneca's program *before* enrolling in the

---

[18] And, as with her other allegations, Gurwitch does not show how this caused her any injury, because she does not allege that she personally was denied any benefits.

WGA Plan. *Id.* ¶ 19; *see DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014) (a complaint's general allegations are not accepted as true when contradicted by more specific allegations). In addition, this allegation is based on an alleged breach of duty of loyalty under § 1104(a)(1), which applies only to fiduciaries. *See* 29 U.S.C. § 1104(a)(1) (describing how "a fiduciary shall discharge his duties with respect to a plan"). Because Gurwitch has not shown that Express Scripts was acting as a fiduciary, she cannot state a claim for breaching a fiduciary duty of loyalty.

*Lastly*, Gurwitch claims that Express Scripts violated ERISA by "[f]ailing to perform [its] duties in the best interest of plan participants and beneficiaries and instead operation the SaveOnSP scheme to benefit" itself. Am. Compl. ¶ 188(d). Like the previous allegation, this is an alleged breach of the duty of loyalty under § 1104(a)(1), which applies only to fiduciaries. Express Scripts is not a fiduciary in "operating the SaveOn" Program pursuant to the plan design adopted by WGA, and, in any event, an entity does not breach an alleged fiduciary duty when following the plan terms. *See supra* at 30. Though Gurwitch complains that the SaveOn Program is less favorable to some participants, a benefit plan does not violate ERISA by adopting a benefit program that creates cost-savings for the plan. *See supra* at 28-29. Indeed, Gurwitch alleges that the plan design only affects those few plan participants who take specialty drugs, to create cost-savings for the plan. Am. Compl. ¶ 41. "ERISA creates a fiduciary duty to plans, not individual participants," and plans are not required to "[f]avor[] the preference of one participant over the [plan] as a whole." *Kokoshka v. Inv. Advisory Comm. of Columbia Univ.*, 2021 WL 3683508, at *9 (S.D.N.Y. Aug. 19, 2021) (citations and quotations omitted). Put simply, there can be no breach of alleged fiduciary duty when Express Scripts applied the plan design adopted by the WGA.

HB: 4925-7755-8567.7

## <u>CONCLUSION</u>

Wherefore, Defendants Express Scripts, Inc. and Accredo Health Group, Inc. respectfully request that the Court dismiss Plaintiff Annabelle Gurwitch's Amended Complaint, with prejudice, and for such other and further relief as the Court deems just and proper.

Dated:  March 14, 2025

Respectfully submitted,

EXPRESS SCRIPTS, INC. AND ACCREDO
HEALTH GROUP, INC.

By their attorneys,

By:  /s/  *Terrance P. Flynn*

Terrance P. Flynn, Esq.
Harris Beach Murtha Cullina PLLC
726 Exchange Street, Suite 1000
Buffalo, New York 14210
(716) 200-5120
tflynn@harrisbeachmurtha.com

- and –

Jeremy M. Sternberg, Esq. (*Admitted Pro Hac Vice*)
Holland & Knight
10 St. James Avenue, 11th Floor
Boston, MA 02116
(617) 523-2700
Jeremy.Sternberg@hklaw.com

Christopher Smith, Esq. (*Admitted Pro Hac Vice*)
Sarah C. Hellmann, Esq. (*Admitted Pro Hac Vice*)
Husch Blackwell
8001 Forsyth Blvd., Suite 1500
St. Louis, MO 63105
(314) 480-1500
Chris.Smith@huschblackwell.com
Sarah.Hellmann@huschblackwell.com