UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANNABELLE GURWITCH, individually and
on behalf of all others similarly situated,

                  Plaintiff,

        v.

SAVE ON SP, LLC, EXPRESS SCRIPTS,
INC., and ACCREDO HEALTH GROUP
INC.,

                Defendants.

Case No. 1:25-CV-00006-LJV

*Oral Argument Requested*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SAVE ON SP, LLC'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Dated: March 14, 2025

HODGSON RUSS LLP
Jodyann Galvin
Emily J. Pfalzer
140 Pearl Street
Suite 100
Buffalo, NY 14202
Tel: 716-856-4000
jgalvin@hodgsonruss.com
epfalzer@hodgsonruss.com

SELENDY GAY PLLC
Andrew R. Dunlap
Meredith Nelson
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
adunlap@selendygay.com
mnelson@selendygay.com

*Attorneys for Defendant Save On SP, LLC*

## TABLE OF CONTENTS

Pages

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ....................................................................................................3

    A.    Self-Funded Commercial Health Plans...............................................3

    B.    Specialty Drugs and Copay Assistance..............................................4

    C.    Defendants' Services ........................................................................4

    D.    Plaintiff's Experience.......................................................................7

ARGUMENT ........................................................................................................9

I.    Plaintiff Fails to State an ERISA Claim ..........................................................10

    A.    Plaintiff Does Not Adequately Allege That SaveOn Is a Fiduciary .....................10

    B.    None of Plaintiff's Alleged ERISA Breaches State a Claim ...............................15

        1.    Plaintiff Lacks Standing to Sue for Purported Violations of the ACA ...............................................................................................15

        2.    Plaintiff Does Not Adequately Allege That She Was Denied Pharmacy Benefits and Her Requested Remedy Is Barred.....................16

        3.    Plaintiff Does Not State a Claim Based on Alleged Misrepresentations Regarding Manufacturer Patient Assistance .............19

        4.    Plaintiff Does Not Sufficiently Allege That SaveOn Acted Against Plan Members' Interests ..............................................................19

II.    Plaintiff Fails to State a RICO Claim ...........................................................20

    A.    Plaintiff Does Not Plead a Cognizable RICO Injury .............................................21

    B.    Plaintiff Does Not Plead a Distinct RICO Enterprise.............................................23

    C.     Plaintiff Does Not Adequately Plead Mail or Wire Fraud......................................26

          1.     Plaintiff Does Not Adequately Allege That Defendants Made Misleading Statements or Omissions.........................................................27

          2.     Plaintiff Does Not Plead That Defendants' False Statements Proximately Caused Her RICO Injuries ...................................................29

CONCLUSION.......................................................................................................................31

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ASARCO, Inc. v. Kadish*,
   490 U.S. 605 (1989)..................................................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................9

*Bailey v. N.Y. L. Sch.*,
   2017 WL 6611582 (S.D.N.Y. Dec. 27, 2017) ...........................................................27

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA)
   Litig.*,
   756 F. Supp. 2d 330 (S.D.N.Y. 2010).......................................................................11

*Boyle v. United States*,
   556 U.S. 938 (2009)...................................................................................................23

*Calcano v. Swarovski N. Am. Ltd.*,
   36 F.4th 68 (2d Cir. 2022) ...........................................................................................9

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001)...................................................................................................23

*Cigna Corp. v. Amara*,
   563 U.S. 421 (2011)...................................................................................................12

*Ciminelli v. United States*,
   598 U.S. 306 (2023)...................................................................................................31

*Connecticut v. Physicians Health Servs. Of Connecticut, Inc.*,
   287 F.3d 110 (2d Cir. 2002).......................................................................................15

*Coulter v. Morgan Stanley & Co. Inc.*,
   753 F.3d 361 (2d Cir. 2014)................................................................................. 10-11

*Crichton v. Golden Rule Ins. Co.*,
   576 F.3d 392 (7th Cir. 2009) ...............................................................................24, 25

*Crocco v. Xerox Corp.*,
   137 F.3d 105 (2d Cir. 1998).......................................................................................18

*Dumas v. Wyeth*,
   283 F. Supp. 2d 948 (S.D.N.Y. 2003)........................................................................27

iii

*Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*,
    217 F. Supp. 3d 608 (N.D.N.Y. 2016) .................................................................13

*Edmondson v. Raniere*,
    2024 WL 4334374 (E.D.N.Y. Sept. 27, 2024) ....................................................30

*Empire Merchs., LLC v. Reliable Churchill LLLP*,
    902 F.3d 132 (2d Cir. 2018).................................................................................26

*In re Express Scripts/Anthem ERISA Litig.*,
    285 F. Supp. 3d 655 (S.D.N.Y. 2018)............................................................10, 18

*F.W. Webb Co. v. State St. Bank & Tr. Co.*,
    2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010).....................................................10

*Felton v. Monroe Cmty. Coll.*,
    579 F. Supp. 3d 400 (W.D.N.Y. 2022) .............................................................5, 9

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
    2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019).......................................................9

*Fletcher v. ConvergEx Grp. LLC*,
    388 F. Supp. 3d 293 (S.D.N.Y. 2019).................................................................10

*Fossil Grp., Inc. v. Angel Seller LLC*,
    627 F. Supp. 3d 180 (E.D.N.Y. 2022) ................................................................24

*In re: Gen. Motors LLC Ignition Switch Litig.*,
    2016 WL 3920353 (S.D.N.Y. July 15, 2016) .....................................................24

*Gladstone Realtors v. Vill. of Bellwood*,
    441 U.S. 91 (1979)..............................................................................................28

*Grasso Enterprises, LLC v. Express Scripts, Inc.*,
    809 F.3d 1033 (8th Cir. 2016) ............................................................................18

*Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*,
    819 F.3d 42 (2d Cir. 2016)............................................................................17, 18

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995)................................................................................14

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)............................................................................................12

*Ironforge.com v. Paychex, Inc.*,
    747 F. Supp. 2d 384 (W.D.N.Y. 2010)...............................................................29

*Joyce v. Curtiss–Wright Corp.*,
  171 F.3d 130 (2d Cir. 1999)........................................................................22

*Kaczmarek v. Int'l Bus. Machs. Corp.*,
  30 F. Supp. 2d 626 (S.D.N.Y. 1998)..................................................24, 25

*Kokoshka v. Inv. Advisory Comm. of Columbia Univ.*,
  2021 WL 3683508 (S.D.N.Y. Aug. 19, 2021).......................................20

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
  191 F.3d 229 (2d Cir. 1999)........................................................................21

*Lauder v. First Unum Life Ins. Co.*,
  55 F. Supp. 2d 269 (S.D.N.Y. 1999).........................................................14

*Laurent v. PricewaterhouseCoopers LLP*,
  945 F.3d 739 (2d Cir. 2019)........................................................................16

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996)........................................................................................22

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)........................................................................................15

*Mackin v. Auberger*,
  59 F. Supp. 3d 528 (W.D.N.Y. 2014) ..............................................20-21, 23

*Mahon v. Ticor Title Ins. Co.*,
  683 F.3d 59 (2d Cir. 2012)..................................................................27-28, 29

*Martinez v. JPMorgan Chase Bank, N.A.*,
  178 F. Supp. 3d 184 (S.D.N.Y. 2016)................................................22, 23

*Massaro v. Palladino*,
  19 F.4th 197 (2d Cir. 2021) ........................................................................11

*Massimino v. Fid. Workplace Servs., LLC*,
  2016 WL 6893609, *aff'd*, 697 F. App'x 85 (2d Cir. 2017).....................8, 9

*Mayfield v. Gen. Elec. Cap. Corp.*,
  1999 WL 182586 (S.D.N.Y. Mar. 21, 1999) ............................................24, 25-26

*Mulder v. PCS Health Sys., Inc.*,
  432 F. Supp. 2d 450 (D.N.J. 2006) ............................................11-12, 13, 20

*Neary v. Weichert*,
  489 F. Supp. 3d 55 (E.D.N.Y. 2020) .........................................................16

*Neurological Surgery, P.C. v. Travelers Co.*,
    243 F. Supp. 3d 318 (E.D.N.Y. 2017) ...................................................................8

*New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*,
    798 F.3d 125 (2d Cir. 2015) .............................................................................18

*New York State Teamsters Council Health & Hosp. Fund v. Centrus Pharmacy Sols.*,
    235 F. Supp. 2d 123 (N.D.N.Y. 2002) ...............................................................13

*Pegram v. Herdrich*,
    530 U.S. 211 (2000).........................................................................................20

*Pfizer, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
    42 F.4th 67 (2d Cir. 2022) .................................................................................4

*Phoenix Asset Grp., LLC v. URS Sols. LLC*,
    2022 WL 524587 (W.D.N.Y. Feb. 22, 2022) ................................................9, 19

*Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of New York*,
    64 F. Supp. 3d 459 (E.D.N.Y. 2014) .................................................................18

*Ray v. Spirit Airlines, Inc.*,
    126 F. Supp. 3d 1332 (S.D. Fla. 2015) ..........................................................24, 25

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017)...............................................................................26

*Ricks v. Brown*,
    2020 WL 5628969 (W.D.N.Y. Sept. 21, 2020) ...................................................5

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
    806 F.3d 71 (2d Cir. 2015)...................................................................... 29-30, 31

*Smith v. Med. Benefit Adm'r Grp., Inc.*,
    639 F.3d 277 (7th Cir. 2011) ...........................................................................17

*Spiteri v. Russo*,
    2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013) .....................................................21

*Taylor v. Bernanke*,
    2013 WL 4811222 (E.D.N.Y. Sept. 9, 2013) .....................................................16

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    10 F.4th 147 (2d Cir. 2021) ...............................................................................5

*U1it4less, Inc. v. Fedex Corp.*,
    871 F.3d 199 (2d Cir. 2017).........................................................................23-24

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) ......................................................................................18

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) ..........................................................................15

*Williams v. Affinion Grp.*,
    LLC, 889 F.3d 116 (2d Cir. 2018) .............................................................26, 29

*Wiltz v. New York Univ.*,
    2019 WL 8437456 (S.D.N.Y. Dec. 23, 2019) ................................................22

*Wyckoff v. Off. of the Comm'r of Baseball*,
    211 F. Supp. 3d 615 (S.D.N.Y. 2016)............................................... *passim*

*Xie v. JPMorgan Chase Short-Term Disability Plan*,
    2018 WL 501605 (S.D.N.Y. Jan. 19, 2018) ...................................................14

**Rules and Statutes**

29 C.F.R. § 2509.75-8............................................................................12, 13, 14

29 C.F.R. § 2520.................................................................................................17

29 C.F.R. § 2560.503-1 ............................................................................... 17-18

29 C.F.R. § 2590.715-2715A1(a)(2)(xx) ........................................................17

45 C.F.R. § 156.122(a).................................................................................... 3-4

89 Fed. Reg. 26218 (2024) ...............................................................................6

18 U.S.C. § 1952................................................................................................26

18 U.S.C. § 1962(c) ...............................................................................2, 21, 24

18 U.S.C. § 1964(c) ..........................................................................................21

29 U.S.C. § 1132(a) .................................................................................. *passim*

29 U.S.C. § 1133................................................................................................17

29 U.S.C. § 1002(21)(A)....................................................................................10

29 U.S.C. § 1102 .................................................................. 10, 12, 14, 15-16

29 U.S.C. § 1104(a)(1)...........................................................................3, 10, 19

29 U.S.C. § 1185d(a)(1)....................................................................................15

29 U.S.C. § 1191b ........................................................................................................15

Fed. R. Civ. P. 9(b) .....................................................................................................26

Fed. R. Civ. P. 12(b) .....................................................................................................9

**Other Authorities**

*Affordable Care Act Implementation FAQs - Set 18 "Q2,"* Ctrs. for Medicare and
   Medicaid Servs. (last visited Mar. 14, 2025),
   https://www.cms.gov/CCIIO/Resources/Fact-Sheets-and-
   FAQs/aca_implementation_faqs18 ..........................................................................3

EHB Rx Crosswalk, Qualified Health Plan Certification Information & Guidance,
   Ctrs. for Medicare & Medicaid Servs. (last accessed Mar. 14, 2025),
   https://www.qhpcertification.cms.gov/s/Review%20Tools ........................................8

*FAQs About Affordable Care Act Implementation (Part XIX)*, Ctrs. for Medicare
   and Medicaid Servs. (May 2, 2014),
   https://www.cms.gov/cciio/resources/fact-sheets-and-
   faqs/aca_implementation_faqs19 ............................................................................6

Utah State Benchmark Plan 2025-2027, https://www.cms.gov/files/document/ut-
   bmp-summary-py2025-2027.pdf ..............................................................................8

Defendant Save On SP, LLC ("SaveOn") (with Express Scripts, Inc. ("Express Scripts") and Accredo Health Group, Inc. ("Accredo," together "Defendants") moves to dismiss Plaintiff Annabelle Gurwitch's ("Plaintiff" or "Gurwitch") Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiff's only purported injury is one that Defendants did not cause and could not redress. She is a member of a health plan that requires its members (or "participants") to pay "copays" for some services. The plan also sets an out-of-pocket maximum; once a member has paid the maximum amount in a given year, the plan covers the full cost of their medical expenses. Plaintiff takes a specialty drug, the manufacturer of which gives her "copay assistance" by paying a portion of her copays for that drug. If Plaintiff's health plan counted manufacturer copay assistance payments toward members' out-of-pocket maximums, then Plaintiff could hit that maximum while spending less out of her own pocket. But it does not, so Plaintiff must pay her portion of the costs of her medical treatments until she hits that maximum—like every other plan member. Having to pay these plan-mandated amounts is Plaintiff's only alleged injury.

Plaintiff's dissatisfaction with her plan's benefit design does not give her actionable claims. Defendants advise health plans on how to structure their plan benefits, but they do not have the authority or discretion to set those benefits or to adopt a different benefit design—by law, only the plans do. While Plaintiff alleges that her plan's design violates the Affordable Care Act ("ACA"), even were that true (it is not), only her plan could change its terms, not Defendants. Plaintiff has no basis to seek an injunction under ERISA against entities that could not change her plan terms, or to cast the services that they provide to their health plan clients as a racketeering scheme. This, plus several other pleading defects, requires dismissal of Plaintiff's claims.

Plaintiff's ERISA Section 502(a)(3) claim fails. *First*, because Defendants have no discretionary authority over her plan, they cannot be plan fiduciaries, so Plaintiff cannot sue them for breaches of fiduciary duty. *Infra* Argument § I.A. *Second*, because Defendants have no ability or authority to change her plan's benefit design, Plaintiff lacks standing to sue them for that design allegedly violating the ACA. *Infra* Argument § I.B.1. *Third*, because Plaintiff does not plead that she was denied any benefits, and because ERISA and its implementing regulations provide an exclusive remedy for any improper denials that Plaintiff does not invoke, she cannot assert claims based on supposed violations of ERISA's claims denial processes. *Infra* Argument § I.B.2. *Fourth*, because Plaintiff does not allege that SaveOn misrepresented anything to her, she does not plead a claim based on supposed misrepresentations. *Infra* Argument § I.B.3. *Finally*, because Plaintiff does not allege facts showing that SaveOn acted against the interests of the plans as a whole, she fails to plead a breach of the duty of loyalty. *Infra* Argument § I.B.4.

Plaintiff's RICO claim fares no better. *First*, because Plaintiff has no property right in a plan benefit design that counts copay assistance for her drug toward her out-of-pocket maximum, denying her this design is not a cognizable RICO injury. *Infra* Argument § II.A. *Second*, because Plaintiff fails to plead that Defendants are different from her alleged RICO enterprise, she does not meet RICO Section 1962(c)'s requirement that they be distinct. *Infra* Argument § II.B. *Third*, Plaintiff does not adequately plead predicate acts of mail and wire fraud—for example, she does not allege that she received any false statements or that she was unaware of any information that SaveOn supposedly omitted. *Infra* Argument § II.C.1. *Finally*, because Plaintiff alleges that her plan design caused her alleged injury and does not allege that she relied on Defendants' so-called fraud, she fails to plead that she was harmed as the result of that fraud. *Infra* Argument § II.C.2.

The Court should dismiss Plaintiff's Amended Complaint with prejudice.

## BACKGROUND

### A.    Self-Funded Commercial Health Plans

In a self-funded commercial health plan, the employer, union, or other entity that provides benefits to plan members is the "plan sponsor" that establishes the plan, Am. Compl. ¶¶ 29-30, 42, and also funds the plan, providing the money that the plan uses to pay benefits to participants, id. ¶ 30. The plan sponsor has a fiduciary obligation to "defray[] reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(ii).

The plan sponsor determines plan members' cost-sharing obligations—amounts that participants pay toward the cost of covered services. These include copays, which are set amounts that members must pay toward covered services. Am. Compl. ¶¶ 3, 7, 45. Plans may also set out-of-pocket maximums—the maximum amount that a member must pay toward the cost of some covered services during a plan year before the plan starts paying their full cost of those services. *See id.* ¶ 8. The Affordable Care Act (the "ACA") caps members' annual out-of-pocket maximum for some covered services.

The ACA also requires plans to cover a certain number of services, called "essential health benefits" ("EHBs").[1] Those EHBs are defined by reference to state "benchmark" plans, which require the plans to cover a minimum number of drugs in various therapeutic categories. *See* 45 C.F.R. § 156.122(a) (requiring health plans to cover the greater of "[o]ne drug in every United States Pharmacopeia (USP) category and class," or "[t]he same number of prescription drugs in each category and class as the EHB-benchmark plan"). The ACA does not require plans to cover drugs beyond those required as EHBs. Am. Compl. ¶ 74; *see also* 45 C.F.R. § 156.122(a)(1)

---

[1] *See Affordable Care Act Implementation FAQs – Set 18 "Q2,"* Ctrs. for Medicare and Medicaid Servs. (last visited Mar. 14, 2025), https://www.cms.gov/CCIIO/Resources/Fact-Sheets-and-FAQs/aca_implementation_faqs18.

(requiring coverage of "[t]he same number of prescription drugs in each category and class as the EHB-benchmark plan").

### B.    Specialty Drugs and Copay Assistance

Plaintiff alleges that "specialty medications" "carry a sticker price of tens, if not hundreds of thousands of dollars per year." *Id.* ¶ 3. In 2020, the average specialty medication carried a list price of $84,442 a year ($7,036 per month), and this price has increased faster than the rate of inflation each year since. *Id.* ¶ 57. Today, the average specialty medication can cost over $200,000 a year ($16,667 per month). *Id.* For self-funded plans, most of these costs are paid directly by plan sponsors. *Id.* ¶¶ 51, 54, 57.

Most drug manufacturers offer plan members who take their specialty drugs "copay assistance." *Id.* ¶ 65. Through copay assistance programs, drug manufacturers pay most of or all the members' copays, reducing or eliminating the amounts that members must pay for the drugs. *Id.* ¶ 66. While Plaintiff alleges that these programs "exist to benefit patients," *id.* ¶ 67, the true purpose of copay assistance is to induce participants to keep using the manufacturers' drugs, as manufacturers know that the members' health plans will shoulder most of the cost. *See Pfizer, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 42 F.4th 67, 74, 79 (2d Cir. 2022) (holding that Pfizer's copay assistance program violated the federal anti-kickback statute because it was "designed to induce Medicare beneficiaries to purchase" Pfizer drugs).

### C.    Defendants' Services

In partnership with Express Scripts, a pharmacy benefit manager or "PBM," and Accredo, the specialty pharmacy affiliated with Express Scripts, SaveOn advises plan sponsors to structure their plans so that members can receive the full amount of copay assistance that drug manufacturers choose to make available. Am. Compl. ¶ 10; *see also id.* ¶ 158 Tbl. 1 (showing higher patient copay assistance collected "[w]ith SaveOnSP"). Plaintiff alleges that the relationships among

SaveOn, Express Scripts, and their health plan clients are governed by a Master Program Agreement between SaveOn and Express Scripts (the "MPA")[2] and by Joinder Agreements with plan sponsors.[3] *See* Am. Compl. ¶ 91, 93.

SaveOn's services benefit the plans by reducing the amounts that they must pay to cover their members' prescriptions. Am. Compl. ¶¶ 79-83, *see also id.* ¶ 158 Tbl. 1 (showing lower spending by plans "[w]ith SaveOnSP"). They also benefit plan members as a whole—the less money that a plan pays for specialty drugs, the lower its annual pharmacy spend, and the lower its premiums for all members in future years. *See* Ex. 1 at 1.[4]

To do this, SaveOn's health plan clients classify some specialty drugs that the ACA does not require them to cover as "non-essential health benefits" ("NEHBs") *Id.* ¶ 74-75; Ex. 1 at 2-3. The designation of a drug as an NEHB does not relate in any way to a member's medical need for the drug. For NEHBs, the plans increase copays so that plan members take full advantage of the copay assistance that manufacturers make available. Am. Compl. ¶¶ 11, 86. The plans make clear

---

[2] The MPA is incorporated by reference in the Amended Complaint, *e.g.*, Am. Compl. ¶¶ 91, 93, 95, 200, 201, and thus can be considered on a motion to dismiss, *see Ricks v. Brown*, 2020 WL 5628969, at *2 (W.D.N.Y. Sept. 21, 2020) (on a motion to dismiss, courts "consider[], in addition to the complaint, and written instruments attached, statements incorporated by reference"). *See also Felton v. Monroe Cmty. Coll.*, 579 F. Supp. 3d 400, 415 n.8 (W.D.N.Y. 2022) ("Although Plaintiff did not attach a copy of the contract to his complaint, Plaintiff specifically references and relies on the contract in his complaint, and therefore it is incorporated by reference into the complaint, and the Court may consider it in connection with the motion to dismiss."); *see also In re Tribune Co. Fraudulent Conveyance Litig.*, 10 F.4th 147, 176 (2d Cir. 2021) ("contracts that set forth the relationship between [two entities]" were "integral to the complaint" when relationship between the entities was at issue).

[3] SaveOn and Express Scripts executed an earlier agreement in August 2016, which permitted SaveOn to contract directly with Express Scripts's clients. Ex. 3. The terms of that 2016 agreement and the MPA are substantially similar. Pursuant to the 2016 agreement, in October 2020, Plaintiff's health plan entered into a direct contract with SaveOn. Ex. 5.

[4] All references to "Ex." are to the exhibits to the Declaration of Andrew R. Dunlap, dated March 14, 2025.

to participants that copay assistance payments made by drug manufacturers toward the cost of these NEHB drugs will not count toward the members' out-of-pocket maximums:

> The specialty drugs included in the program are non-essential health benefits under the Plan and the cost of those specialty drugs will not be applied toward satisfying your Coinsurance Network Out-of-Pocket Limit in all cases, whether or not you choose to participate in the copayment assistance program.

Ex. 1 at 3; Ex. 2 at 67 ("The cost of drugs included in the SaveonSP program, including the applicable cost share amounts, whether or not you choose to participate in the program," are "expenses that do not accumulate to the ACA in-network out-of-pocket limit."); *see also* Am. Compl. ¶ 113. The plans then offer the members a benefit—if they apply for copay assistance from their drugs' manufacturers, the plans will cover the full cost of the drugs, even if the manufacturers never pay a dime. Ex. 1 at 1 (even if a participant's request to enroll in copay assistance is declined, "the Participant's cost share will still be zero under the terms of this program"). Plaintiff says that the ACA requires plans to count copay assistance towards members' out-of-pocket maximums, so this benefit design purportedly violates the ACA. *E.g.*, Am. Compl. ¶ 16, 76.[5]

---

[5] It does not. While the Court need not resolve Plaintiff's assertion to decide this motion, the benefit structure that SaveOn advises its clients to adopt demonstrably complies with the ACA. The Department of Health and Human Services ("HHS") has confirmed that self-funded plans— including Plaintiff's plan—can designate drugs as EHBs or as NEHBs, as long as they designate the required minimum number of drugs as EHBs. In guidance regarding implementation of the ACA, HHS's Centers for Medicare & Medicaid Services ("CMS") explained that "self-insured [] health plans have discretion to define 'essential health benefits.'" *FAQs About Affordable Care Act Implementation (Part XIX)*, Ctrs. for Medicare and Medicaid Servs. (May 2, 2014), https://www.cms.gov/cciio/resources/fact-sheets-and-faqs/aca_implementation_faqs19. In 2024, CMS considered requiring all plans to treat all prescription drugs they cover as EHBs but chose not to do so for large group and self-funded plans. *See* 89 Fed. Reg. 26218, 26351 (2024). This guidance validates that those plans can designate drugs as NEHBs and, therefore, can not only exclude cost-sharing for these NEHBs from the out-of-pocket maximum, but can also exclude copay assistance paid by the manufacturer from the out-of-pocket maximum. This makes sense: Because these plans are not required to cover drugs other than EHBs, they can decide what coverage (if any) to offer for such drugs.

SaveOn helps plans administer this benefit by telling plan members about it and making sure that they apply for copay assistance. Am. Compl. ¶¶ 95-102. SaveOn also ensures that members are not charged for their drugs, even if the manufacturers stop providing copay assistance. Am. Compl. ¶ 126; Ex. 4 at 14 ¶ (a)(v); Ex. 3 at 10 ¶ (a)(vi). SaveOn contacts members who may be impacted by this benefit design before the benefit "go[es] live." Am. Compl. ¶¶ 96-99. If a member tries to fill a drug at the Accredo online pharmacy before speaking with SaveOn, Accredo pauses the process, and ensures that the member speaks with SaveOn before filling the drug. *Id.* ¶¶ 101-02. Plaintiff alleges that such pauses are a "denial" of benefits. *Id.* ¶ 109.[6]

Under the relevant contracts, ████████ Redacted subject to Motion to Seal ████████ ████████████████████████████████████████. Ex. 4 § 14.16 (████████ ████ Redacted subject to Motion to Seal ████); Ex. 5 § 6 (same). SaveOn simply recommends benefit designs to plan sponsors that only the plan sponsors have the authority to adopt. Ex. 4 at 14 ¶ (a)(i)-(ii) (████████████████████████ ████████████ Redacted subject to Motion to Seal ████████████ ████████████████████████████████████████); Ex. 3 at 10 ¶ (a)(i)-(ii) (same).

### D.    Plaintiff's Experience

Plaintiff is enrolled in a self-funded plan, which she alleges is sponsored by the Writers Guild of America, Am. Compl. ¶ 29; Ex. 2 at v-vi,[7] which partners with SaveOn, *id.* ¶ 19. Its terms

---

[6] They are not. *See infra* Argument § I.B.2.

[7] Plaintiff's plan documents state that the sponsor of her plan is the Writers' Guild-Industry Health Plan Fund. Ex. 2 at v; *see also id.* at vi ("All benefits described in this SPD are provided by the Fund (and not the Writers Guild of America, East, Inc. or the Writers Guild of America, West, Inc. (collectively referred to as the 'WGA'), which are separate legal entities).").

are set forth in her plan's Summary Plan Description ("SPD"),[8] which explains that the plan's funds are held in a trust, the trustees of which act as plan sponsors and plan administrators. *See* Ex. 2 at 186-88. The SPD provides that the plan sponsor sets members' cost-sharing obligations. *Id.* at 62. It states: "The nature and extent of benefits provided by the Writers' Guild-Industry Health Fund and the rules governing eligibility are determined solely and exclusively by the Trustees of the Fund." *Id.* at v. No one else has "authority to alter benefits." *Id.*

Plaintiff takes a specialty drug, Tagrisso, that is one of over 100 drugs in the "Antineoplastics, Molecular Target Inhibitors" category and class.[9] The Utah state benchmark plan that governs Plaintiff's plan, Am. Compl. ¶ 74, requires plans to cover only ten drugs in that category as EHBs.[10] Plaintiff's plan designates Tagrisso as an NEHB, and does not count copay assistance payments for it towards Plaintiff's out-of-pocket maximum. Am. Compl. ¶¶ 19, 74-75, 88. Because Plaintiff qualifies for the benefit administered by SaveOn, the plan covers any costs for her drug that copay assistance does not cover, so she gets her medication for free. *Id*. ¶ 116; *see also* Ex. 1 at 1.

---

[8] Plaintiff's plan documents, including the SPD and Summary of Material Modification ("SMM"), are integral to the Amended Complaint, and thus can be considered on a motion to dismiss. *See Massimino v. Fid. Workplace Servs., LLC*, 2016 WL 6893609, at *4 (considering plan documents in resolving motion to dismiss ERISA claims), *aff'd*, 697 F. App'x 85 (2d Cir. 2017); *Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp. 3d 318, 325 (E.D.N.Y. 2017) ("[A] court may consider … documents that are incorporated by reference or are otherwise integral to the allegations in the complaint, such as ERISA plan documents.").

[9] *See* EHB Rx Crosswalk, Qualified Health Plan Certification Information & Guidance, Ctrs. for Medicare & Medicaid Servs. (last accessed Mar. 14, 2025) (showing 105 drugs categorized as Molecular Target Inhibitors and including Tagrisso ("Osimertinib Mesylate") in that class) (available for download at https://www.qhpcertification.cms.gov/s/Review%20Tools).

[10] *See* Utah State Benchmark Plan 2025-2027 at 6, https://www.cms.gov/files/document/ut-bmp-summary-py2025-2027.pdf.

Plaintiff does not allege that she made any claim for her drug that was denied, or that she was ever delayed in receiving it. She also does not allege that any Defendant ever made a false statement to her. The only injury that Plaintiff alleges is that, because her plan does not count copay assistance toward her out-of-pocket maximum, she had to pay cost-sharing amounts for other services required by her plan. Am. Compl. ¶¶ 28, 212. Plaintiff alleges that these payments were caused by her plan's benefit design. *Id.* ¶ 162. She also alleges that all plan members are required to pay such expenses, "regardless of their acquiescence to the SaveOn Program." *Id.*

## ARGUMENT

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and (6), Plaintiff must allege facts "that affirmatively and plausibly suggest that [she] has standing to sue," *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022), and are sufficient "to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading facial plausibility requires alleging "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

The Court may consider documents "incorporated by reference" in the Amended Complaint or that "are otherwise integral to the allegations," and it may consider documents of which it takes judicial notice. *See, e.g.*, *Massimino*, 2016 WL 6893609, at *4 (considering plan documents in resolving motion to dismiss ERISA claims); *Felton*, 579 F. Supp. 3d at 415 n.8 (contract referenced in complaint was incorporated by reference); *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at *1 n.1 (S.D.N.Y. Sept. 18, 2019) (taking judicial notice of plan documents when resolving motion to dismiss ERISA claims).

The Court need not credit "legal conclusion[s] couched as factual allegations" or "formulaic recitation[s] of the elements of a cause of action." *Phoenix Asset Grp., LLC v. URS Sols. LLC*, 2022 WL 524587, at *2, *4 (W.D.N.Y. Feb. 22, 2022) (dismissing claim based on conclusory

allegations); *accord Calcano*, 36 F.4th at 75 (dismissing claim on standing grounds after finding allegations were conclusory).

## I.    Plaintiff Fails to State an ERISA Claim

In her claim under ERISA Section 502(a)(3), Am. Compl. ¶¶ 186-92, Plaintiff alleges that SaveOn and Express Scripts act as fiduciaries of her plan in five ways, *id.* ¶ 186, and violate ERISA in four ways, *id.* ¶ 188. She appears to allege that the ERISA violations are fiduciary breaches. *Compare* Am. Compl. ¶ 186(a)-(b) (describing two of SaveOn's alleged "fiduciary acts"), *with id.* ¶ 188(a)-(b) (alleging that SaveOn engaged in those same "fiduciary acts" when committing the alleged ERISA violations); *see also id.* ¶ 189. In any form, the claims fail, as Plaintiff does not adequately allege that SaveOn is a fiduciary and fails to state any claims for any ERISA breaches.

### A.    Plaintiff Does Not Adequately Allege That SaveOn Is a Fiduciary

Plaintiff does not sufficiently allege that SaveOn is a fiduciary, as she must to bring claims for breach of fiduciary duty under ERISA Section 502(a)(3). 29 U.S.C. § 1104(a)(1); *see also In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 677 n.32 (S.D.N.Y. 2018), *aff'd sub nom. Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44 (2d Cir. 2020), *cert. denied* 142. S. Ct. 2867 (June 27, 2022). ERISA distinguishes between "named fiduciaries" identified in the plan documents, 29 U.S.C. § 1102(a)(1)-(2), and "functional fiduciaries," who are fiduciaries "by virtue of the services they perform for the plan," *F.W. Webb Co. v. State St. Bank & Tr. Co.*, 2010 WL 3219284, at *4 (S.D.N.Y. Aug. 12, 2010).

Because Plaintiff does not (and cannot) allege that SaveOn is a named fiduciary, she at most alleges that it is a functional fiduciary. *See Fletcher v. ConvergEx Grp. LLC*, 388 F. Supp. 3d 293, 298 (S.D.N.Y. 2019) (analyzing whether defendant was a functional fiduciary when plaintiff did not allege it was a named fiduciary). A functional fiduciary "exercises any discretionary authority or discretionary control" with respect to the management or administration of an ERISA

plan, or the disposition of its assets. 29 U.S.C. § 1002(21)(A). Fiduciary status is determined on an act-by-act basis, as a person or entity "may be an ERISA fiduciary with respect to certain matters but not others." *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 366 (2d Cir. 2014) (citation and internal quotations omitted).

Plaintiff alleges that SaveOn engages in five "fiduciary acts." Am. Compl. ¶ 186(a)-(e). Three are simply plan benefit design decisions that cannot be fiduciary acts. For the remaining two, Plaintiff does not allege that SaveOn acted with the discretion required to be a fiduciary.

*First*, Plaintiff does not adequately allege that SaveOn acts as a fiduciary by setting plan benefits. Am. Compl. ¶ 186(b) ("failing to recognize copay amounts paid by patients … as counting towards the patient's annual cost-sharing balances"); *id.* ¶ 186(d) ("paying, or causing plans to pay, inflated copays for participants and beneficiaries in the SaveOn Program, but charging those inflated [copay] amounts to those [members] who do not sign up"); *id.* ¶ 186(e) ("paying, or causing plans to pay, a portion of the cost-sharing" left after drug manufacturers pay copay assistance). Per Plaintiff's plan documents, these acts are part of the plan's benefit design. *See* Ex. 1 at 2 ("[T]he cost of drugs included in the program will not be applied toward satisfying the Participant's out-of-pocket maximum."); *id.* at 1-2 (if a member participates in the SaveOn-administered benefit, the plan covers all costs of the drug; if not, the member is responsible for copays).

Determining what benefits a plan offers is not a fiduciary act. An entity "acts as a 'settlor,'" not as a fiduciary, when it "makes a decision regarding the form or structure of the [p]lan such as who is entitled to receive [p]lan benefits and in what amounts, or how such benefits are calculated." *Massaro v. Palladino*, 19 F.4th 197, 212-13 (2d Cir. 2021); *see also In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 756 F. Supp. 2d 330, 345-46 (S.D.N.Y. 2010) (an entity "does not act in a fiduciary capacity with respect to its decisions regarding the

plan design"); *Mulder v. PCS Health Sys., Inc.*, 432 F. Supp. 2d 450, 458-59 (D.N.J. 2006) (PBM's "plan design decision[s] regarding the makeup of the plan" were not fiduciary acts subject to "ERISA's fiduciary duties"). This, alone, disposes of these three allegations.

In any event, SaveOn does not determine what benefits the plans offer. Under federal law, only the plan sponsor has authority to decide what benefits the plan will offer and how to structure the plan's benefit design. 29 U.S.C. § 1102(a), (b)(2)-(3); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) (plan sponsors "make[] decision[s] regarding the form or structure of the [p]lan such as who is entitled to receive [p]lan benefits and in what amounts, or how such benefits are calculated"); *Cigna Corp. v. Amara*, 563 U.S. 421, 437 (2011) ("The plan's sponsor (*e.g.,* the employer), like a trust's settlor, creates the basic terms and conditions of the plan, executes a written instrument containing those terms and conditions, and provides in that instrument 'a procedure' for making amendments."). As Plaintiff concedes, and the plan documents show, SaveOn is not the sponsor of Plaintiff's plan, Am. Compl. ¶ 19, Ex. 2 at v), and the plan did not delegate to SaveOn the authority to determine benefits. SaveOn merely ▮▮▮▮▮▮▮▮▮▮ Redacted subject to Motion to Seal Ex. 4 at 14 ¶ (a)(ii); Ex. 3 at 10 ¶ (a)(iii), and "[m]aking recommendations to others for decisions with respect to plan administration" is not a fiduciary function under federal law, 29 C.F.R. § 2509.75-8; *see also Mulder*, 432 F. Supp. 2d at 457-58 (PBM did not act as fiduciary by advising plans what drugs to cover).

SaveOn also does not act as a fiduciary when it ensures that plan benefits are paid according to plan terms, *see* Am. Compl. ¶ 186(d) ("paying or causing plans to pay inflated copays" for "participants … in the SaveOnSP Program"); *id.* ¶ 186(e) ("paying, or causing plans to pay, a portion of the cost-sharing" required by drug manufacturers), because it exercises no discretionary authority when it does so. SaveOn's contracts with Express Scripts and the plans provide that it is

not a fiduciary and that it lacks any discretion with respect to plan administration or management. Ex. 4 § 14.16; Ex. 5 § 6. The plans say that they will cover copays for members who qualify for the SaveOn-administered benefit, Ex. 1 at 1-2 ("[I]f you participate, you will have no out-of-pocket costs for the drug"), and the plan sponsor directs SaveOn to ensure that members' costs are covered, Ex. 4 at 14 ¶ (a)(v) (directing SaveOn to █████████████████████████

███████ Redacted subject to Motion to Seal ███████████); Ex. 3 at 10 ¶ (a)(vi) (same). Processing claims consistent with plan terms, and as directed by the plan, is not a fiduciary act. *See Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*, 217 F. Supp. 3d 608, 638 (N.D.N.Y. 2016) (entity's "non-discretionary application of a [p]lan rule" that it "does not interpret or otherwise control" was not a fiduciary act); *Mulder*, 432 F. Supp. 2d at 456 (processing claims per plan specifications was not a fiduciary act); *New York State Teamsters Council Health & Hosp. Fund v. Centrus Pharmacy Sols.*, 235 F. Supp. 2d 123, 127-28 (N.D.N.Y. 2002) (dismissing ERISA claim because PBM defendant processed claims solely in accordance with plan terms and within the framework established by the plan sponsor); *see also* 29 C.F.R. § 2509.75-8 (the "[a]pplication of rules determining eligibility," "[c]alculation of benefits," and "[p]rocessing of claims" are not fiduciary functions when done "within a framework of policies, interpretations, rules, practices and procedures made by other persons").

*Second*, Plaintiff does not adequately allege that SaveOn acts as a fiduciary by "denying pharmacy claims … when patients attempt to fill … prescriptions without enrolling in [SaveOn]." Am. Compl. ¶ 186(a). Plaintiff alleges that any rejections resulted from Express Scripts's "claims processing software," *id.* ¶ 101, but she does not allege that Express Scripts exercised any discretion when it set up that processing system—as opposed to simply following the instructions of the plans and implementing the plans' benefit designs—and processing claims without exercising

discretion is not a fiduciary act, *see Easter*, 217 F. Supp. 3d at 638 (N.D.N.Y. 2016). In any event, Plaintiff alleges any that claim "rejection[s]" originate with Express Scripts, *id.* ¶¶ 101, 107, 201, not SaveOn, her plan documents task Express Scripts with administering pharmacy benefits, Ex. 2 at 140, and they do not delegate that authority to SaveOn, Ex. 4 at 14 (listing SaveOn's responsibilities); Ex. 3 at 10 (same); *see also* 29 U.S.C. § 1102(a), (b)(2) (giving all authority for plan administration not otherwise delegated to third parties to plan sponsor and named fiduciaries). In light of these specific allegations, the Court need not credit Plaintiff's single, conclusory allegation that SaveOn denies claims. *E.g., Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (dismissing claim based on "attenuated allegations" "contradicted … by more specific allegations in the Complaint[.]").

    *Finally*, Plaintiff does not adequately allege that SaveOn acts as a fiduciary by "instruct[ing]" plan members "to sign up for SaveOnSP." Am. Compl. ¶ 186(c). She alleges that SaveOn tells members about the terms of their plans and how to sign up for copay assistance, *id.* ¶¶ 12-13, 96-99, 102, 116, 126, 173, 186(b), 200, but "[o]rientation of new participants and advising participants of their rights and options under the plan" are not fiduciary acts, *see* 29 C.F.R. § 2509.75-8; *Lauder v. First Unum Life Ins. Co.*, 55 F. Supp. 2d 269, 273 (S.D.N.Y. 1999) (entity that communicates information about plan benefits but has no "discretionary authority or control over the management of the plan or disposition of the assets" is not a fiduciary). When SaveOn speaks with participants, it does so pursuant to a contract, in accordance with plan terms, and without the discretion necessary to establish a fiduciary duty. *See Xie v. JPMorgan Chase Short-Term Disability Plan,* 2018 WL 501605, at *2-3 (S.D.N.Y. Jan. 19, 2018) (denying leave to add Section 502(a)(3) claims because defendant's alleged communications with plan participants about eligibility requirements were purely ministerial).

14

**B.     None of Plaintiff's Alleged ERISA Breaches State a Claim**

Even if Plaintiff had sufficiently alleged that SaveOn acts as a fiduciary (she has not), she independently fails to state a claim for any alleged ERISA violations. Am. Compl. ¶ 188.

### 1.     Plaintiff Lacks Standing to Sue for Purported Violations of the ACA

Plaintiff lacks standing to bring her claim that the ACA, as incorporated into ERISA, required Defendants to count copay assistance toward her out-of-pocket maximum, Am. Compl. ¶ 188(a), because they do not have the ability or authority to redress her alleged injury. *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07, 110-11 (2d Cir. 2008) (for Article III standing, plaintiff must show "a non-speculative likelihood that the injury can be remedied by the requested relief" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992))); *Connecticut v. Physicians Health Servs. Of Connecticut, Inc.*, 287 F.3d 110, 113 (2d Cir. 2002) (to bring a claim under ERISA, plaintiff must present a claim for relief that will "redress violations of ERISA or the terms of an ERISA-regulated plan").[11]

Plaintiff's alleged injury here—her plan's decision not to count copay assistance payments toward the out-of-pocket maximum—is part of her plan's benefit design. Ex. 1 at 2 ("[T]he cost of drugs included in the program will not be applied toward satisfying the Participant's out-of-pocket maximum."). Defendants lack authority to alter the plan's terms, including whether to count copay assistance toward participants' out-of-pocket maximums; only the plan sponsor can do that. *See supra* Argument § I.A; 29 U.S.C. § 1102(a), (b)(2)-(3) (absent explicit delegation, only plan

---

[11] ERISA incorporates the ACA's mandates only as to "group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans." 29 U.S.C. § 1185d(a)(1); *see also id.* § 1191b(a)(1), (b)(2) (defining "group health plan" and "health insurance issuer"). It does not purport to subject other entities—including service providers like SaveOn—to the ACA's requirements. That makes sense: SaveOn and similar entities have no legal authority to ensure that a plan complies with the ACA's requirements.

sponsor and named fiduciaries have authority to manage and administer plan). If Plaintiff believes that her plan's terms violate ERISA (they do not), she can sue her plan sponsor under Section 502(a)(3) for reformation of those terms and under Section 502(a)(1) for enforcement of the reformed terms. *Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 744-45 (2d Cir. 2019). But even if Defendants were enjoined to stop operating the "SaveOn Program," the plan sponsor would still retain the discretion and authority not to count copay assistance toward out-of-pocket maximums. Because Defendants cannot redress Plaintiff's alleged injury, only the plan sponsor can, she lacks standing here. *See Neary v. Weichert*, 489 F. Supp. 3d 55, 67 (E.D.N.Y. 2020) ("There is no redressability where such depends on an independent actor who retains 'broad and legitimate discretion [that] the courts cannot presume either to control or to predict'" (quoting *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989))); *Taylor v. Bernanke*, 2013 WL 4811222, at *10 (E.D.N.Y. Sept. 9, 2013) (plaintiffs lacked standing to challenge agency's delay in implementing rule required under statute when regulated entities that were the direct source of alleged harm had discretion during compliance period to decide whether to engage in the allegedly harmful activity).

### 2.    Plaintiff Does Not Adequately Allege That She Was Denied Pharmacy Benefits and Her Requested Remedy Is Barred

Plaintiff fails to state a claim that SaveOn "[i]ssu[es] wrongful pharmacy claim denials without proper notice to the patient[.]" Am. Compl. ¶ 188(b). Plaintiff does not allege that she, personally, was denied her benefits, so her claim necessarily fails. *Wyckoff v. Off. of the Comm'r of Baseball*, 211 F. Supp. 3d 615, 627-28 (S.D.N.Y. 2016) ("In a proposed class action, 'the named class plaintiffs must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"), *aff'd sub nom. Wyckoff v. Off. of Comm'r of Baseball*, 705 F. App'x 26

(2d Cir. 2017). She also does not plausibly allege that SaveOn can deny benefit claims. Am. Compl. ¶¶ 101, 107, 201; Ex. 2 at 140; Ex. 4 at 14; Ex. 3 at 10.

Plaintiff also does not sufficiently allege that any rejection was a "denial of benefits" triggering obligations under Section 503. 29 U.S.C. § 1133. Under her plan, members must obtain pre-approval or prior authorization before receiving some pharmacy benefits. Ex. 2 at 202-03. For these "pre-service claims," 29 C.F.R. § 2560.503-1(m)(2), the plan administrator has "a reasonable period of time … but not later than 15 days after receipt of the claim" to notify the member of the plan's benefit determination. 29 C.F.R. § 2560.503-1(f)(iii). This is not a "denial of benefits" if the prior approval occurs within the 15 days provided and the member ultimately receives the benefit. *Id.*; s*ee generally Smith v. Med. Benefit Adm'r Grp., Inc.*, 639 F.3d 277, 282, 285 (7th Cir. 2011) ("[p]re-authorization decisions are not necessarily coverage decisions" and delays in pre-authorization only breach fiduciary duties, if ever, to the extent that they "exceed the period of time allowed by federal regulations"); 29 C.F.R. § 2520.104b-3(d)(3)(ii) (describing "preauthorization" as a "condition or requirement" on obtaining benefits and not a benefits determination itself); 29 C.F.R. § 2590.715-2715A1(a)(2)(xx) (same).[12] Plaintiff does not allege that any claim by her or any other plan member was placed on hold for more than fifteen days or ultimately denied, so she fails to plead a violation of Section 503.

In any event, even if Plaintiff had been denied benefits, her "exclusive" legal remedy would be provided by Section 503 and its implementing regulation. *Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 50, 57-58 (2d Cir. 2016). Under that remedial scheme,

---

[12] Such pauses are common. If a plan member attempts to fill a prescription that requires prior authorization, for example, the pharmacy may put her request on hold while the plan waits for her provider to submit the required information. *See generally* 29 C.F.R. § 2560.503-1 (plans must establish any "procedures for obtaining prior approval as a prerequisite for obtaining a benefit, such as preauthorization procedures"); 29 C.F.R. § 2520.102-3(s) (same).

if Plaintiff does not receive the required notice that her claim is denied, her administrative remedies are deemed exhausted, 29 C.F.R. § 2560.503–1(*l*), and she can sue her plan sponsor "to recover benefits due to [her] under the terms of [her] plan" under Section 502(a)(1)(B).[13] 29 U.S.C. § 1132(a)(1)(B); *see also Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of New York*, 64 F. Supp. 3d 459, 469 (E.D.N.Y. 2014) (claims for benefits under Section 502(a)(1)(B) may be brought only against "the plan itself, the plan administrator, and the plan trustees" (citing *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998))).

Plaintiff cannot sue for a general injunction under Section 502(a)(3)—the only remedy she seeks here—based on alleged denials, because Section 502(a)(3) is a "catchall remedial section offering appropriate equitable relief for injuries caused by violations that [Section] 502 does not elsewhere adequately remedy." *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). Because Plaintiff could sue under Section 502(a)(1) for any denial of benefits, she has no need for equitable relief under Section 502(a)(3). *See Grasso Enterprises, LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1038 (8th Cir. 2016) (denying injunction under Section 502(a)(3) based on denial of benefits as "plan beneficiaries have an adequate remedy at law, a suit under [Section] 502(a)(1)(B)").[14]

---

[13] Unless the plan's failure to follow the appropriate procedures was "inadvertent and harmless," the member's claim will be "reviewed de novo in federal court." *Halo*, 819 F.3d at 57-58.

[14] Plaintiff also alleges that SaveOn violates the ACA by discriminating against plan participants who require various specialty drugs, Am. Compl. ¶ 167, and violates IRS guidelines by providing its services to HSA-eligible high-deductible health plans ("HDHPs"), *id.* ¶¶ 138-143. She does not assert claims based on these alleged violations. Such claims would fail. Plaintiff does not allege that she or any plan member was deprived of benefits because of a disability, and her plan's decisions of which specialty drugs to cover and what copays to apply is not discrimination. *See In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d at 686-87. Plaintiff also could not assert claims based on services to HDHPs, as she does not allege that she was enrolled in an HDHP.

### 3.    Plaintiff Does Not State a Claim Based on Alleged Misrepresentations Regarding Manufacturer Patient Assistance

Plaintiff fails to state a claim that when SaveOn "instruct[s] plan participants and beneficiaries on how to obtain patient assistance from drug manufacturers" it "misrepresent[s] material facts [to patients] and caus[es] patients to make misrepresentations to drug manufacturers." Am. Compl. ¶ 188(c). Although she alleges that SaveOn "force[s]" patients "to sign up for copay assistance programs for which they are not eligible," *id.* ¶¶ 102, 124, Plaintiff does not allege that SaveOn misrepresented anything to any plan member about copay assistance or that it caused any member to misrepresent anything to any drug manufacturer. Nor could SaveOn have falsely misrepresented to Plaintiff that she was eligible for copay assistance; she alleges that she was, in fact, eligible. Am. Compl. ¶ 129 (AstraZeneca terms and conditions state that SaveOn participants "may receive varied program benefits");[15] *see generally Wyckoff*, 211 F. Supp. 3d at 627-28 (explaining that named class plaintiff must show injury).

### 4.    Plaintiff Does Not Sufficiently Allege That SaveOn Acted Against Plan Members' Interests

Plaintiff does not adequately allege that SaveOn breached a fiduciary duty by "[f]ailing to perform [its] duties in the best interests of plan participants and beneficiaries and instead operating the SaveOnSP scheme to benefit [Defendants]." Am. Compl. ¶ 188(d). This conclusory allegation simply recites the elements of her cause of action, *compare id.*, *with* 29 U.S.C. § 1104(a)(1) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries."), which does not state a claim, *see, e.g.*, *Phoenix Asset Grp., LLC*, 2022 WL 524587, at *3 (rejecting allegations as "nothing more than legal conclusions").

---

[15] Plaintiff alleges that three other manufacturers bar SaveOn participants from using copay assistance for their drugs, Am. Compl. ¶ 130, but she does not take any of their drugs.

Plaintiff's allegations here have several other defects. *First*, the only harm she alleges is that plans do not count copay assistance toward out-of-pocket maximums, Am. Compl. ¶ 213—but setting or reducing plan benefits is not a fiduciary breach, even if the result is more out-of-pocket costs for plan members, *see Pegram v. Herdrich*, 530 U.S. 211, 225 (2000) (ERISA lets fiduciaries "take actions to the disadvantage of employee beneficiaries," including "modifying the terms of a plan as allowed by ERISA to provide less generous benefits"). *Second*, she alleges that the plan design affects only the relatively few plan members who take specialty drugs, Am. Compl. ¶¶ 71, 86, 116-18, not most members, who do not—and fiduciaries must act for the benefit of plan participants as a whole. *Kokoshka v. Inv. Advisory Comm. of Columbia Univ.*, 2021 WL 3683508, at *9 (S.D.N.Y. Aug. 19, 2021) (ERISA does not require a plan to "[f]avor[] the preference of one participant over the [plan] as a whole").[16] *Finally*, Plaintiff alleges that SaveOn charges its clients for its services, Am. Compl. ¶¶ 147-49, 201—but this too is not a fiduciary breach. *See Kokoshka*, 2021 WL 3683508, at *9 ("So long as a fiduciary makes decisions 'with an eye single to the interests of the participants and beneficiaries,' it will satisfy its duty of loyalty even if its decisions 'incidentally benefit[]' itself, as well." (collecting cases)); *Mulder*, 432 F. Supp. 2d at 459 (third party's adherence to contract setting its compensation, "bargained for at arm's length" with the plan and "at a pre-determined price[]," did not breach fiduciary duties).

## II.     Plaintiff Fails to State a RICO Claim

"A plaintiff's burden is high when pleading RICO allegations as 'courts look with particular scrutiny at claims for [] civil RICO, given RICO's damaging effects on the reputations of

---

[16] Plaintiff effectively concedes that SaveOn's services benefit plans as a whole. She alleges that these services "divert patient copay assistance" to "patients' insurers," Am. Compl. ¶¶ 15, 103, 147, 206, whom she defines to include the "employers that sponsor health plans for their employees," *id.* ¶ 3—that is, the plans.

individuals alleged to be engaged in RICO enterprises and conspiracies.'" *Mackin v. Auberger*, 59 F. Supp. 3d 528, 541 (W.D.N.Y. 2014) (quoting *Spiteri v. Russo*, 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013)). To state a claim for a violation of RICO Section 1962(c), Plaintiff must allege that (1) SaveOn committed acts prohibited by that section ("a substantive RICO violation"); (2) Plaintiff suffered a cognizable injury to business or property; and (3) SaveOn's violation caused the injury. 18 U.S.C. § 1964(c). To plead a substantive RICO violation, Plaintiff must allege that SaveOn was "a person employed by or associated with any enterprise" who "conduct[ed] … such enterprise's affairs through a pattern of racketeering activity…." 18 U.S.C. § 1962(c). Plaintiff does not adequately plead (1) injury; (2) a "person" distinct from the "enterprise" and "pattern of racketeering activity"; or (3) predicate acts of mail and wire fraud.

## A.    Plaintiff Does Not Plead a Cognizable RICO Injury

Plaintiff does not plead a cognizable RICO injury because she does not allege a legal entitlement to the money she claims to have paid as a result of SaveOn's conduct. The only injury that Plaintiff identifies is that the alleged scheme "deprive[s her] of [her] ability to offset some of [her] healthcare costs with patient copay assistance funds" and therefore causes her to pay "excess healthcare expenses." RICO Stmt. at 18.[17] She alleges that this harm occurs because (1) plans do not count copay assistance provided by participants' drug manufacturers toward their out-of-pocket maximums; (2) if the plans did, then that copay assistance would cover some portion of

---

[17] In her Complaint, Plaintiff alleges that the RICO scheme also harmed drug manufacturers. Am. Compl. ¶¶ 132, 213. She does not pursue these allegations in her RICO Case Statement. Even if she did, a plaintiff lacks standing to bring RICO claims that are "contingent on harm to third parties," *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 239 (2d Cir. 1999), so Plaintiff would lack standing to bring a RICO claim based on allegations that SaveOn harmed third-party drug manufacturers, *id.* at 239 (reversing district court, ordering dismissal of RICO claims brought by benefit plan against tobacco company based on harms that company allegedly caused individual plan members); *see also Mackin*, 59 F. Supp. 3d at 558 ("The alleged injures … are not viable … since they are injuries to third parties.").

participants' out-of-pocket maximums; and (3) once their out-of-pocket maximums were satisfied, they would spend less on other healthcare because their plan would cover all their costs for any covered services. Am. Compl. ¶¶ 15, 34, 89, 113. Her alleged injury thus stems directly from her plan's decision not to count copay assistance for her drug towards her out-of-pocket maximum.

This alleged injury is not "a cognizable property interest" because Plaintiff has no "formal legal interest" in the extra money she claims to have paid. *Martinez v. JPMorgan Chase Bank, N.A.*, 178 F. Supp. 3d 184, 189 (S.D.N.Y. 2016). Her plan explicitly requires her to satisfy her out-of-pocket maximum before she is entitled to have her plan pay all her covered medical expenses, Ex. 2 at 66-67, and it excludes payments toward her drug from her out-of-pocket maximum, *id.* at 67 (listing "[t]he cost of drugs included in the SaveonSP program, including the applicable cost-share amounts, whether or not you choose to participate in the program" as an expense that "do[es] not accumulate towards the ACA Network OOP Limit"). Plaintiff does not have a legal right to benefits that her plan does not provide and so has no cognizable property interest in them under RICO. *See Martinez*, 178 F. Supp. 3d at 189 (dismissing RICO claim where plaintiff had no legal interest in bank funds over which she did not have a valid judgment lien); *Wiltz v. New York Univ.*, 2019 WL 8437456, at *19 (S.D.N.Y. Dec. 23, 2019) (dismissing RICO claim where plaintiff had no legal interest in a rent-stabilized apartment when plaintiff could lawfully be evicted), *report and recommendation adopted*, 2020 WL 614658 (S.D.N.Y. Feb. 10, 2020).[18]

Plaintiff cannot evade this legal reality by alleging that, under the ACA, once a plan opts to cover a non-essential drug, that drug is "subject to the [ACA's] cost-sharing limitation." Am.

---

[18] Plaintiff has no right to any specific plan term, as plan sponsors may modify their plans at any time. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 887, 890 (1996) ("[E]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans"); *Joyce v. Curtiss–Wright Corp.*, 171 F.3d 130, 133 (2d Cir. 1999) (under ERISA, the general rule is that plans are not vested, so employers may unilaterally amend them).

Compl. ¶ 76. Even if her plan violated the ACA by not counting copay assistance for her drug towards the out-of-pocket maximum (it does not), Plaintiff would not be entitled to have the plan remedy that violation by counting those payments toward the out-of-pocket maximum. Because her plan is not required to cover her drug as an "essential health benefit" under the ACA and the relevant benchmark plan, it could comply with the ACA by not covering the drug at all—in that scenario, Plaintiff would have no copay for her drug (as she would have no coverage for it), and would receive no copay assistance that could count towards her out-of-pocket maximum. Or the plan could comply with the ACA by covering 100% of the drug's cost—Plaintiff would receive no copay assistance (as none would be needed), and there would be no copay assistance payments to count towards the maximum. In either scenario, Plaintiff would wind up paying the same amount for other healthcare expenses that she claims as her sole injury here. Because Plaintiff has no legal right to a plan design that would allow her to avoid these expenditures, she has no property interest in that money and thus no cognizable RICO injury from having to spend it. *See, e.g.*, *Martinez*, 178 F. Supp. 3d at 189.

### B.    Plaintiff Does Not Plead a Distinct RICO Enterprise

Plaintiff fails to satisfy RICO Section 1962(c)'s requirement that she allege "the existence of two distinct entities: '(1) a person; and (2) an enterprise that is not simply the same person referred to by a different name.'" *Mackin*, 59 F. Supp. 3d at 545 (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). A RICO plaintiff may allege that a RICO enterprise is an "association in fact"—a group of entities who are not a formal "enterprise" but share a common purpose, structure, and continuity. *Boyle v. United States*, 556 U.S. 938, 946 (2009). But the Second Circuit has held that, as a "common sense principle, rooted in the language of Section 1962(c)," a plaintiff "may not circumvent the distinctiveness requirement by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents

23

carrying on the regular affairs of the defendant." *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205-06 (2d Cir. 2017) (citations and quotations omitted). This principle disallows, for example, alleged enterprises consisting of a corporation working with its own employees or of a corporation working with other companies in its same corporate family, even if they are separate legal entities. *Id.* at 206 (citing cases).

Courts apply this principle to find a lack of distinctiveness in alleged association-in-fact enterprises consisting of separate corporations with a close business relationship acting in the ordinary course of their businesses. *See, e.g.*, *Fossil Grp., Inc. v. Angel Seller LLC*, 627 F. Supp. 3d 180, 200-01 (E.D.N.Y. 2022) (licensor and a licensee who worked together to license, manufacture, and distribute licensor's products); *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *15 (S.D.N.Y. July 15, 2016) (car manufacturer and claims administrator who worked together to process manufacturer's claims); *see also Mayfield v. Gen. Elec. Cap. Corp.*, 1999 WL 182586, at *8-9 (S.D.N.Y. Mar. 21, 1999) (financing company and merchants who worked together to arrange company's financing for merchants' customers); *Ray v. Spirit Airlines, Inc.*, 126 F. Supp. 3d 1332, 1341 (S.D. Fla. 2015) (airline and software consultant who worked together to implement airline's website and reservation system), *aff'd*, 836 F.3d 1340 (11th Cir. 2016); *Kaczmarek v. Int'l Bus. Machs. Corp.*, 30 F. Supp. 2d 626, 630 (S.D.N.Y. 1998) (IBM and its sales representatives, third-party dealers, distributors, and resellers, who worked together to sell IBM's products); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399-400 (7th Cir. 2009) (health insurer and nonprofit who worked together to offer discounts on insurer's insurance).[19]

---

[19] And for good reason: "The corporate world is not always vertically integrated: every day, companies seek outside assistance for certain business ventures" and "outsource"; those common business relationships "do not, in and of themselves, constitute racketeering 'enterprises' for the purpose of RICO liability under [Section 1962(c)]." *Ray*, 126 F. Supp. 3d at 1341. If they did,

This distinctiveness requirement dispenses with Plaintiff's allegations here: The "enterprise" that she alleges is merely a description of Defendants carrying out their close, contractual business relationship, in the ordinary course of their business. She alleges that Express Scripts and Accredo, subsidiaries of the same corporate parent, Am. Compl. ¶¶ 21-23, work with SaveOn "in partnership" on the "SaveOn Program," *id.* ¶ 20; *see also id.* ¶ 70 (alleging the three Defendants together "constructed" the scheme at issue). The incorporated MPA confirms that ███████████ Redacted subject to Motion to Seal , Ex. 4 § 2.1, and Plaintiff does not allege that SaveOn does anything else, *see* Am. Compl. ¶ 20 (describing SaveOn's business as advertising and administering a program in partnership with Express Scripts and Accredo). The "enterprise" that Plaintiff describes in her RICO Case Statement, RICO Stmt. at 14-15, consists solely of the work that SaveOn does with Express Scripts and Accredo pursuant to their contracts.[20]

Far from alleging that the enterprise's activities are distinct from Defendants' regular activities, then, Plaintiff alleges that SaveOn's work with Express Scripts *was* SaveOn's regular activity—like the licensee in *Fossil Group*, the claims administrator in *General Motors*, the merchants in *Mayfield*, the software consultant in *Ray*, the third-party sellers in *Kaczmarek*, and the nonprofit in *Crichton*. Because Plaintiff alleges an enterprise of SaveOn "carrying out [its] regular

---

"every company with agents and employees [would be] *per se* a member of a distinct RICO 'enterprise.'" *Id.* at 1342.

[20] *Compare, e.g.*, Am. Compl. ¶ 83 (alleging SaveOn "carve[s] [NEHBs] out of participating health plans' standard benefit design"), *and* RICO Stmt. at 15 (same), *with* Ex. 4 at 14 ¶ (a)(i)-(ii) (

Redacted subject to Motion to Seal

); *and* Ex. 3 at 10 ¶ (a)(ii)-(iii) (same); *compare* Am. Compl. ¶¶ 12, 94-102 (alleging SaveOn helps plan participants sign up for copay assistance), *and* RICO Stmt. at 15 (same); *with* Ex. 4 at 14 ¶ (a)(iv) ( Redacted subject to Motion to Seal );
*and* Ex. 3 at 10 ¶ (a)(v) (same).

activities, albeit in an illegitimate manner," she "fail[s] to allege a RICO enterprise that is suffi-

ciently distinct from Defendant itself," which is an independent basis to dismiss her RICO claim.

*Mayfield*, 1999 WL 182586, at *9.

### C.    Plaintiff Does Not Adequately Plead Mail or Wire Fraud

To plead a pattern of racketeering activity, a plaintiff must allege predicate acts that pose

a continuous threat of criminal activity and that are related to each other. *See Reich v. Lopez*, 858

F.3d 55, 59 (2d Cir. 2017). Plaintiff bases her RICO claim here on predicate acts of mail and wire

fraud, which requires her to allege (1) a scheme to defraud, (2) money or property that is the object

of the scheme, and (3) use of the mail or wires to further the scheme. *Empire Merchs., LLC v.*

*Reliable Churchill LLLP*, 902 F.3d 132, 138-40 (2d Cir. 2018).[21] Plaintiff must allege predicate

acts of mail and wire fraud with particularity by "detail[ing] the specific statements that are false

or fraudulent, identif[ing] the speaker, stat[ing] when and where the statements were made, and

explain[ing] why the statements were fraudulent." *Williams v. Affinion Grp.*, LLC, 889 F.3d 116,

124-25 (2d Cir. 2018) (citing Fed. R. Civ. P. 9(b)). Plaintiff fails to adequately allege that Defend-

ants made any false statements or that any alleged fraud caused her injury.

---

[21] Plaintiff also alleges as a predicate act "travel in interstate and foreign commerce in aid of a racketeering enterprise in violation of 18 U.S.C. § 1952." Am. Compl. ¶ 204. To state a violation of the Travel Act, 18 U.S.C. § 1952, Plaintiff must allege that SaveOn "travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to" commit, distribute the proceeds of, or otherwise promote "any unlawful activity," defined as (1) "any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances, … or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, (2) "extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States," or (3) violations of the Bank Secrecy Act and certain other money laundering offenses "indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 …." Plaintiff does not allege any "unlawful activity" as defined by the Travel Act, and her RICO Statement does not mention the Travel Act at all. Any claims based on the Travel Act thus should be dismissed.

1.    **Plaintiff Does Not Adequately Allege That Defendants Made Misleading Statements or Omissions**

All five of the alleged sets of false statements that Plaintiff says constitute predicate acts of mail or wire fraud suffer from incurable pleading defects. RICO Stmt. at 9-12.

*First*, Plaintiff alleges that "SaveOn falsely represents to targeted patients that the SaveOn Program is designed to help patients save money on their specialty medications." *Id.* at 9. She admits that this statement is literally true. Am. Compl. ¶ 126 ("[T]argeted members that enroll in the SaveOn Program … are ultimately responsible for $0."); *id.* ¶ 124 ("[T]he patient is actually responsible for $0."); RICO Stmt. at 9 (acknowledging that "targeted patients may not have any cost-sharing obligation to pay for specialty medications").

Plaintiff fails to plausibly allege that this statement is "misleading by omission." RICO Stmt. at 9. "[A] plaintiff's actual knowledge of the allegedly misrepresented or omitted facts is fatal to his or her fraud claim." *Bailey v. N.Y. L. Sch.*, 2017 WL 6611582, at *12 (S.D.N.Y. Dec. 27, 2017) (citation omitted). While Plaintiff alleges that SaveOn "does not disclose that patients must instead bear additional healthcare costs out of their own pockets, increasing their annual healthcare expenses," *id.*, the plan documents explicitly told her that "the cost of drugs included in the program will not be applied toward satisfying the Participant's out-of-pocket maximum," Ex. 1 at 2; Ex. 2 at 147. Because Plaintiff knew the information that she alleges was omitted, it cannot be the basis of a mail or wire fraud claim. *Dumas v. Wyeth*, 283 F. Supp. 2d 948, 953 (S.D.N.Y. 2003) (plaintiff could not reasonably rely on omission as he had "the means to discover the true nature of the transaction by the exercise of ordinary intelligence").

*Second*, Plaintiff alleges that "Accredo falsely represents to targeted patients who attempt to fill a specialty prescription without first signing up for the SaveOn Program that their prescription claim has been rejected." RICO Stmt. at 10. This allegation cannot support her RICO claim,

27

because Plaintiff does not allege that she, personally, ever had a claim rejected. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (upholding dismissal because plaintiff failed to allege "'a distinct and palpable injury to [her]self'" (alteration in original) (quoting *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979)); *see also Wyckoff*, 211 F. Supp. 3d at 627-28 (named plaintiff must allege personal injury). She also alleges that these statements to patients who do have claims rejected are true: She alleges that Express Scripts's "claims processing software" "rejects the patient's prescription claim," and that "[t]his rejection prompts Accredo to connect the patient with a SaveOnSP representative," Am. Compl. ¶ 101. Plaintiff even claims that this "rejection" is an "adverse benefit determination" under ERISA. *Id.* ¶ 107. She cannot allege that these rejections occur for ERISA purposes but not for RICO purposes.

*Third*, Plaintiff alleges that Accredo falsely tells copay assistance programs that members owe large copays, while Defendants tell members "who have enrolled in the SaveOn Program that their copay is $0." RICO Stmt. at 10-11; *see also* Am. Compl ¶ 116. But Plaintiff elsewhere alleges that these statements are true: According to Plaintiff, Defendants cause the plans to set "inflated copays," Am. Compl. ¶ 112, and the plan documents confirm that the copays are "cover[ed] completely" by the plan for members who qualify for the benefit that SaveOn administers. Ex. 2 at 147; Am. Compl. ¶ 126. Plaintiff cannot base a fraud claim on truthful statements.

*Fourth*, Plaintiff alleges that SaveOn "causes targeted patients to unwittingly misrepresent their eligibility to receive assistance from patient copay assistance programs." RICO Stmt. at 11. But she does not allege that SaveOn ever caused her, personally, to misrepresent her eligibility to her drug manufacturer, which disposes of any claim based on this allegation. *See Mahon*, 683 F.3d at 64 (plaintiff must allege injury to herself); *Wyckoff*, 211 F. Supp. 3d at 627-28 (named plaintiff in class action must allege personal injury). Plaintiff also could not allege that SaveOn caused her

mispresent anything: She alleges that her drug maker's terms and conditions state that she was eligible for copay assistance as a member of a SaveOn-advised plan. Am. Compl. ¶ 129 (SaveOn participants "*may receive varied program benefits*" (emphasis added)). While Plaintiff alleges that SaveOn tells participants how to apply for copay assistance, RICO Stmt. at 11, she does not describe any false statements that SaveOn made to plan members about eligibility while doing so, which is not enough to satisfy basic pleading standards, let alone Rule 9(b). *Williams*, 889 F.3d at 125 (dismissing civil RICO claim when complaint "lack[ed] ... particularized allegation of an underlying 'scheme to defraud' animated by a material misrepresentation").

*Finally*, Plaintiff alleges that Accredo "represents to the patient copay assistance program that the condition that the targeted patient pay a portion of the cost of the medication has been satisfied, without disclosing that SaveOnSP, not the patient, paid." RICO Stmt. at 11-12. Plaintiff does not allege that Accredo made such a statement to her drug manufacturer about her payments, *see Mahon*, 683 F.3d at 64 (plaintiff must allege injury to herself); *Wyckoff*, 211 F. Supp. 3d at 627-28 (named plaintiff in class action must allege personal injury), let alone "when and where" any statement as to any plan member occurred, as Rule 9(b) requires, *Williams*, 889 F.3d at 124-25. While Plaintiff alleges that Accredo does not tell drug manufacturers that the plans made the payments, she does not allege that Accredo had any duty to tell them the source of those payments, as is required to state a claim for material omission. *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 394 (W.D.N.Y. 2010) ("A fraud claim based on a failure to disclose must allege that the defendant had a duty to disclose material information and failed to do so.").

### 2. Plaintiff Does Not Plead That Defendants' False Statements Proximately Caused Her RICO Injuries

Even if Plaintiff had adequately pled that Defendants made false statements (she does not), her RICO claims would still fail because she does not allege that such statements injured her.

Plaintiff must allege that Defendants' predicate acts proximately caused her injury. *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 86-87 (2d Cir. 2015); *see also Edmondson v. Raniere*, 2024 WL 4334374, at *13, *18-20 (E.D.N.Y. Sept. 27, 2024) (dismissing RICO claims based on mail and wire fraud where plaintiffs had not alleged an injury proximately caused by the fraud). Plaintiff fails to allege that here. Her only alleged injury was being "forced to incur additional healthcare expenses," Am. Compl. ¶ 19, but Plaintiff does not allege that any of Defendants' supposed fraud caused her to incur these costs.

Plaintiff alleges that she paid those extra expenses of her plan's benefit design: "Once their health plan sponsor has joined the [SaveOn] Program," all plan members are "forced to cover additional medical expenses up to the annual cost-sharing limit." *Id.* ¶ 162. Plaintiff specifically alleges members suffer the same "injury" "*regardless of their acquiescence to the SaveOn Program.*" *Id.* (emphasis added); *see also id.* ¶ 28 (alleging members who "refuse[] to sign up for the SaveOn Program … still b[ear] additional cost sharing obligations because their cost-sharing payments for their targeted medications d[o] not count towards their annual limits"); Ex. 2 at 67 (plan documents listing "[t]he "cost of drugs included in the SaveonSP program, including the applicable cost share amounts, whether or not you choose to participate in the program" as an expense that "do[es] not accumulate towards the ACA Network OOP Limit"); Ex. 1 at 2 (plan documents providing that, for all members, "the cost of drugs included in the program will not be applied toward satisfying the Participant's out-of-pocket maximum"). This benefit design—clearly disclosed to Plaintiff and all plan members—is not fraud.

Plaintiff also does not allege that she (or anyone) relied on Defendants' statements or omissions. As the Second Circuit explained, "if the person who was allegedly deceived by the misrepresentation (plaintiff or not) would have acted in the same way regardless of the misrepresentation,

then the misrepresentation cannot be a but-for, much less proximate, cause of the plaintiff['s] injury." *Sergeants Benevolent Ass'n Health & Welfare Fund*, 806 F.3d at 87. Plaintiff does not plead here that she would have done anything differently if Defendants had told her something different—or told her nothing. To the contrary, she alleges that she, like all plan members, still would have been subject to the same plan design "regardless" of what Defendants told her or told drug manufacturers. Am. Compl. ¶ 162. Nor does Plaintiff allege that any drug maker relied on Accredo's allegedly false statements; to the contrary, she suggests that manufacturers know how SaveOn's services work, *see, e.g.*, Am. Compl. ¶ 128, undermining any potential suggestion of reliance. Plaintiff thus does not allege that Defendants' false statements proximately caused her RICO injury, which is sufficient to dismiss her RICO claims.[22]

## <u>CONCLUSION</u>

The Court should dismiss Plaintiff's claims with prejudice.

---

[22] Plaintiff also fails to allege that the "object of the[] fraud" was to deprive her of a "traditional property interest[]," as required for a mail-fraud claim. *Ciminelli v. United States*, 598 U.S. 306, 312, 316 (2023). Her only alleged injury stems from her plan's benefit design, Am. Compl. ¶ 19, but Plaintiff has no property interest in a different design, *see supra* at Argument § II.A, so a scheme to implement the existing design is not fraud, *Ciminelli*, 598 U.S. at 312, 316.

Dated:   New York, New York          Respectfully submitted,
        March 14, 2025

By:     /s/         *Andrew R. Dunlap*
        Andrew R. Dunlap
        Meredith Nelson
        SELENDY GAY PLLC
        1290 Avenue of the Americas
        New York, NY 10104
        Tel: 212-390-9000
        adunlap@selendygay.com
        mnelson@selendygay.com

        Jodyann Galvin
        Emily J. Pfalzer
        HODGSON RUSS LLP
        140 Pearl Street
        Suite 100
        Buffalo, NY 14202
        Tel: 716-856-4000
        jgalvin@hodgsonruss.com
        epfalzer@hodgsonruss.com

        *Attorneys for Defendant Save On SP, LLC*